JOSEPH H. HANSEN AND ANOTHER v. EMIL F. REMER
AND OTHERS.
MARYLAND CASUALTY COMPANY, APPELLANT.[1]

October 31, 1924.

Nos. 24,244-24,248, 24,254.

**When surety on contractor's bond is liable for rental value of hired horses.**
1. As a general rule a public contractor's bond is not to be interpreted so as to subject the surety to liability for labor claims arising after the work is abandoned, but special facts and circumstances may give rise to liability. When the surety has taken an assignment of the ·contractor's interest in his equipment, to become effective if the contractor defaults in the performance of the contract, it is liable for the rental value of horses hired by the contractor and retained in his possession, with the knowledge of the surety, after work has ceased.

**And for their feed.**
2. The surety is also liable for the value of feed for the horses during the period mentioned above.

**And for wages of hostlers.**
3. It is also liable for the wages of men employed at the contractor's camp in caring for the horses and other property after work has ceased, the surety having knowledge of the situation.

**And for value of camp supplies.**
4. The bond was conditioned for the ·payment by the contractor of claims for camp supplies and equipment furnished to him. This provision made the surety liable for the value of such supplies when furnished to a subcontractor at his request, in which the contractor joined.

**And for goods furnished workmen on orders from contractor to merchants.**
5. The surety is liable for the value of goods furnished to laborers employed by the contractor and the subcontractors, when furnished

[1] Reported in 200 N. W. 839.

on orders they had given to their men, the amount thereof being deducted from the wages due to the men. The indorsement and delivery of such orders to the merchants furnishing the goods operated as an assignment of the amount of the labor claims represented by the orders.

**Finding justified holding that surety was liable for specified supplies.**

6. A finding that the contractor and his subcontractors kept what are known as "wanigans," from which the laborers were supplied at cost with tobacco, medicines and small articles of wearing apparel, and that the crews could not have been kept together in camps if not so supplied, justified a holding that such goods were camp supplies for which the surety was liable to the merchants who furnished them at the request of the contractor and subcontractors.

**Finding sustained.**

7. The above-mentioned finding is supported by the evidence.

**Evidence stricken out.**

8. There was no error in striking out evidence that the contractor sublet part of the work to a corporation in which he was a stockholder, in the absence of a showing that the claims for supplies included goods furnished to the corporation for which it alone was liable.

**Surety not liable for penalty for failure to pay wages.**

9. The surety was not bound to pay a laborer wages for 15 days after he ceased to work merely because his wages were not paid when demanded. The provisions of chapter 175, Laws 1919, cannot be read into the bond, but the contractor by whom the laborer was employed is liable for the extra compensation. Such additional compensation is in the nature of a penalty imposed for his failure to pay the wages as required by law.

Action in the district court for Cass county to recover $1,375 on a bond. The case was tried before Stanton, J., who ordered judgment in favor of plaintiffs and interveners. From the judgment, defendant Maryland Casualty Company appealed. Intervener Fitzsinger appealed from the judgment so far as it disallowed his claim for $60 in addition to the amount awarded him. Affirmed on appeal of surety; modified on appeal of laborer.

*Abbott, MacPherran, Dancer, Gilbert & Doan,* for Maryland Casualty Company.

*A. L. Thwing,* for respondents and for appellant Fitzsinger.

LEES, C.

This action was brought on a public contractor's bond given by Emil F. Remer, who had a contract with the state for the construction of a highway between Bena and Ball Club in Cass county. Persons having claims against him and his subcontractors intervened. The liability of the surety on the bond for the payment of these claims was in issue in the court below and in this appeal, which is taken by the surety from the judgment against it.

## SURETY COMPANY'S APPEAL.

In addition to the conditions mentioned in G. S. 1913, § 8245, the bond was conditioned for the payment by the principal of claims for "camp supplies, equipment and equipment supplies furnished to said contractor and used in connection with said contract."

## PLAINTIFFS' CLAIM.

1. Remer hired 30 horses from plaintiffs. The contract of hiring provided that the horses should not be taken off the job until it was completed and that Remer should then load the horses for shipment and pay the freight from Bena to Milaca. It also provided that he was to pay $30 a calendar month for the use of each team, payment to be made on the twentieth day of each month. On July 7, 1923, the state commissioner of highways notified Remer that he was in default in the performance of the contract and must cease work. He disregarded the notice and continued to work until July 21, but did no work after that date, and on August 14 the job was taken over by another contractor. The horses remained at Remer's camp and were hired by the new contractor. Plaintiffs' claim for their hire from July 21 to August 14 was disputed, but the court allowed it.

The application for the bond contained an assignment to appellant of Remer's rights and interest in "all the tools, plant and

equipment and materials of every nature and description" that he might have at the place where the work was to be done, and appellant was authorized to take possession and make use thereof in case of a default in the performance of the contract.

On July 21 many of Remer's employes struck because of his failure to pay their wages. One of the plaintiffs was a foreman employed by Remer. He remained at the camp where the horses were kept, and after a few days went to Duluth, called upon appellant's agents and local attorneys and asked for instructions as to the disposition of the horses. They declined to give him any instructions, but did telephone to Remer about releasing the horses, and on August 7 he gave plaintiffs a release.

In Dawson v. N. W. Const. Co. 137 Minn. 352, 163 N. W. 772, it was held that the surety on a public contractor's bond is liable for the rental value of horses necessarily used to do the work. Here the claim arose after the work ceased. As a general rule, a public contractor's bond should not be interpreted so as to subject the surety to liability for labor claims arising after the work is abandoned. The bond is intended to secure the payment of such debts as are contracted in the performance of the contract. It does not necessarily follow that, because the claim is one the contractor must pay, the surety is also bound to pay it. If appellant is liable for the payment of the claim in question, liability must be based on the special terms of his contract with Remer and its conduct after it had notice that he had dropped the work. Plaintiffs seem to have doubted their right to take their horses away without getting the consent of either Remer or the appellant. At any rate Remer's consent was obtained. If he had given it without appellant's approval, he would have violated the contract between them, for appellant had the right to step in and take charge of the work and the equipment. It had notice that the horses were being kept at the camp, and the trial court has found that their use for the purpose of the contract did not cease until August 13. In effect the finding is that they were retained to fulfil the contract, although they did no work.

In view of these special facts and circumstances, we conclude that the claim does not fall within the application of the general rule of nonliability of the surety for claims arising after the principal drops the work.

## CLAIM FOR FEED FOR HORSES.

2. The court found that, at Remer's request, the intervener Joseph Carpenter furnished hay, between July 21 and August 4, 1923, to feed plaintiffs' horses, and held that appellant must pay for it. The term "camp supplies," as used in the bond, comprehends feed for horses kept at the camp. Remer had agreed that the horses should be fed and cared for while in his possession. The hay was furnished before he released them. If it had been furnished while the horses were working, there could be no doubt about appellant's liability. It cannot be said that there was no liability for their feed after the work stopped, in view of our holding with respect to plaintiffs' claim for their hire.

## CLAIMS FOR WAGES AFTER WORK STOPPED.

3. One of Remer's general foremen, barn foreman, two cooks and a cook's helper remained in the camp and continued to do their work. A portion of the work consisted in feeding the strikers. The work was done at the request of a man Remer had placed in general charge of the job. The court held that appellant must pay the wages of the 5 men up to August 14, finding that Remer kept them at the camp with the knowledge of appellant to await the resumption of the work, and that it was advantageous to him, to appellant and to the state that they should be so kept. It is a fair inference that the work could be relet at a lower price if the expense of establishing a new camp and reassembling and organizing a crew of laborers could be avoided. The less the state had to pay to finish the work, the less would be appellant's liability on its bond. There was evidence indicating that appellant knew of the situation. Here, as with the horses, the circumstances remove the case from the application of the general rule of nonliability on the part of the surety for services rendered to the principal after the work is no longer in progress.

CLAIMS FOR CAMP SUPPLIES FURNISHED TO SUBCONTRACTORS.

4. Flemming and Davis were merchants who separately furnished certain supplies, including provisions, to Remer and to his subcontractors. Appellant contends that, while it may be liable for the supplies furnished to Remer, it is not liable for those furnished to subcontractors. It would not be liable if the bond contained only the statutory conditions. Westling v. Republic C. Co. of Pittsburgh, 157 Minn. 198, 195 N. W. 796. If liable at all, it is because of the language of the extra-statutory conditions. There may be a question as to the legal effect of a bond taken by the state, which provides for the payment of claims not within the scope of section 8245. The claimants are not parties to the bond and their right to resort to it may be debatable. However, no point is made as to this, and so we pass by the question and come directly to the point upon which appellant does rely.

The court found that the two claimants mentioned furnished to certain subcontractors, at their request and at the request of Remer, tools, materials and camp supplies and equipment, which were used under and for the purposes of the contract and the subcontracts. The nature of the supplies was such that they could not be incorporated into the road, but they were furnished in response to a request in which Remer joined, hence he could be held for the payment of the reasonable value of the goods furnished. It does not matter that the purchases were made for the benefit of the subcontractors. All concerned in ordering the goods became liable as codebtors. Moreover, through the subcontractors, Remer obtained the means of fulfilling his contract just as effectually as though the supplies had been delivered to him for use at his own camp. He had an interest in the matter, as well as a duty owing to the merchants who acted on his request. See U. S. v. Am. Surety Co. 200 U. S. 197, 26 Sup. Ct. 168, 50 L. ed. 437.

Appellant cites D. L. Wells & Co. v. Mehl, 25 Kan. 205, and other like cases to support its contention that it is not liable for these goods. The doctrine of the cases cited is that when it is sought to extend the liability of the surety on a bond given to secure the performance of a construction contract and the payment for supplies

furnished to the contractor, insofar as such supplies did not enter into or form a part of the structure, there must be, outside and independent of the bond, a personal liability on the part of the contractor beyond which the liability of the surety cannot be extended. The application of the doctrine is not fatal to these claims, for here there was liability on the part of the contractor.

## CLAIMS FOR GOODS FURNISHED ON LABOR ORDERS.

5. The court found that Remer and his subcontractors severally became indebted to their workmen and, when so indebted, made out and delivered to each man a statement of the amount owing to him, the same being in the form of a labor order; that, for a valuable consideration, each holder sold and assigned his claim and indorsed his orders to Flemming and Davis, from whom they received goods in exchange for the orders, and that due notice of the assignment of the orders was given to Remer and to his subcontractors, who accepted them. The evidence showed that Remer had an arrangement with Flemming and Davis under which the goods were furnished, and that, when an order was issued, the amount thereof was charged to the man who received it and deducted from his wages. Appellant contends that this method of doing business did not effect an assignment of the laborers' claims for wages.

In Small v. Smith, 120 Minn. 118, 139 N. W. 133, it was said that an order of this kind is the evidence and symbol of the claim of the laborer to whom it is issued and his indorsement and delivery thereof has the effect of transferring his claim, and the same conclusion was reached in Sheldon v. Padgett, 144 Minn. 141, 174 N. W. 827. In U. S. Fidelity & Guar. Co. v. U. S. 231 U. S. 237, 34 Sup. Ct. 88, 58 L. ed. 200, the ruling was the same, the facts not being much different from those here. The contention that Hardaway v. National Surety Co. 211 U. S. 552, 29 Sup. Ct. 202, 53 L. ed. 321, is controlling cannot be sustained. This is not a case where a contractor has borrowed money to pay the wages of laborers. It is one where he has placed in the hands of the laborers a nonnegotiable instrument evidencing his indebtedness to them and they have transferred it to third persons, who thereby became subrogated to

their right of recourse to the bond to secure the payment of their wages.

Carter County v. Oliver-Hill Const. Co. 143 Tenn. 649, 228 S. W. 720, seems to be out of harmony with these decisions and we are not inclined to follow it.

### WANIGAN CLAIMS.

6. Remer and his subcontractors maintained what are known as "Wanigans," from which the laborers were supplied with snuff, smoking tobacco, medicines, small articles of wearing apparel and the like. The supplies for the wanigans were furnished by Flemming and Davis, whose claims therefor were allowed against appellant. This is assigned as error. The court's finding is that, in the prosecution of the work, it was essential to keep at the camp "for sale to the laborers  *  *  * tobacco and various staple articles of wear and use, and except for the maintenance of such boarding camps and the furnishing of such ordinary and staple supplies, defendant Remer and his subcontractors would have been unable to keep their laborers together and at work." It was also found that the goods were furnished to the laborers at cost and for the sole purpose of making performance of the contract possible. In view of these findings, appellant's liability is the same as its liability for provisions furnished to feed the men at the camps. Both classes of claims fall within the term "camp supplies" as used in the bond.

It was found that goods for the subcontractors' wanigans were furnished at the joint request of Remer and the subcontractors. For reasons already stated, since Remer could be held to pay for them, the claims are within the purview of the bond and appellant is liable. We do not hold that appellant would be liable for supplies not actually furnished to the laborers; that question is not presented by the record.

7. Appellant attacks the finding with respect to the necessity for wanigans on the ground that it is not supported by the evidence. The finding rests on Remer's testimony. He is an experienced contractor and expressed the opinion that it would be impracticable to run a construction camp without carrying tobacco

and other articles such as were supplied to the men from the wanigans, because times have changed and men cannot be kept in camp without providing more for their comfort than was necessary ten years ago. This is not disputed and, in our opinion, supports the finding in question.

Certain other findings are also attacked on the ground that they are not supported by the evidence. None of them have any direct bearing on the questions discussed in the briefs, and hence we make no further mention of them.

8. In connection with the Flemming claim, there is an assignment of error not hitherto mentioned. Subject to objection, Remer testified that in the summer of 1923 he sublet a portion of the work to the Remer Construction Company, a corporation in which he was a stockholder. In the findings, the court sustained the objection and struck out the testimony. Appellant contends that it had the right to prove that a portion of the supplies furnished by Flemming were not furnished to Remer but to the construction company, and, since Remer was not personally liable, appellant cannot be held. Flemming's bookkeeper testified that the goods were sold to Remer but, on cross-examination, admitted that he had been told of the organization of the company. Remer's testimony fell short of showing that the goods were furnished to the company or that he had neither ordered nor received them and hence was not personally bound to pay for them. Therefore appellant was not prejudiced by the ruling.

Upon the appeal of the surety company, the judgment should be and it is affirmed.

## FITZSINGER'S APPEAL.

9. The court found that Fitzsinger worked for Remer as a camp cook from June 1 until August 13, 1923, that the wages due him amounted to $268.03, and that he was discharged on August 13 and demanded his wages, which were not paid.

By virtue of chapter 175, p. 174, Laws 1919, Fitzsinger claimed, in addition to the wages he had earned, pay for 15 days after Aug-

ust 13. This claim was not allowed and he has appealed from the portion of the judgment affecting it.

As to Remer, it seems clear that a recovery should have been permitted. As to the surety, a different question is presented. It was obligated for the payment of labor claims as they became due. It did not expressly bind itself to pay anything in addition. The evident purpose of the statute is to penalize employers who fail to pay their employes' wages promptly. Unless the liability of the principal under chapter 175 should be read into the bond, it would seem that the surety cannot be held for more than the amount actually earned by laborers. Speaking of a bond like this, the court said, in City of Winona v. Jackson, 92 Minn. 453, at p. 466, 100 N. W. 368, that a surety has the right to insist upon the strict letter of his contract, and held that the surety was not liable for liquidated damages for the contractor's failure to complete the work within the time fixed by the contract.

Cases are cited holding that sureties on official bonds are not liable for penalties for the defaults of their principals. There are cases to the contrary. None of them are directly in point because none deal with a statute like the one here involved. We are of the opinion that we would not be justified in reading the provisions of chapter 175 into the bond. If it is thought best to extend the application of the act to the sureties on public contractors' bonds, the legislature, rather than the courts, should do so.

Fitzsinger should have been given judgment against Remer for the additional sum he claims, but not against the surety. Upon the going down of the remittitur, the judgment should be modified accordingly.