**SOUTHERN SURETY CO. v. EOFF et al.**
**(No. 1909.)**

Court of Civil Appeals of Texas. Beaumont.
Dec. 26, 1929.

Rehearing Denied Jan. 8, 1930.

Jno. T. Suggs, Jr., of Dallas, and Russell & Ellington, of Nacogdoches, for appellant.

Adams & McAlister, of Nacogdoches, for appellees.

WALKER, J. This suit was filed on the 20th day of August, 1923, by appellee H. W. Eoff, against Moore Construction Company as contractor, and Southern Surety Company as surety, alleging that in May, 1922, the Moore Construction Company contracted with the State Normal School Board of Regents to erect a school building at Nacogdoches for the Stephen F. Austin State Normal College, and executed a bond payable to the Board with the Southern Surety Company as surety, to secure the faithful performance of the contract. It was specially alleged that this contract was entered into and the bond executed under provisions of articles 5160–5164, Revised Statutes 1925 (old numbers 6394f–6394j). By the terms of the contract the work was to be performed in one year from September 1, 1922. It was further alleged that the contractor entered upon the performance of the contract as provided by its terms, but on or about the 7th day of July, 1923, abandoned the contract and all work on the building. It was made to appear further, either by the pleadings or the proof, that on or about the 7th day of July, 1923, the surety company, under the conditions of its bond, assumed the burdens of the contract and prosecuted the work to completion, delivering the building as a completed job, to the Board on or about the first week in May, 1924. It was further alleged that on or about the 1st day of August, 1922, Eoff contracted to work for the construction company in the erection of

the building at a salary of $175 per month; that his services were necessary for the erection of the building and were so used; that he continued to work under this contract to April, 1923, at which time there was due him an unpaid balance of $413.40; that under his contract with the contractor he continued in his employment to July 7, 1923, at $175 per month, at which time the contractor abandoned its contract, owing him for his services from April 1st to and inclusive of July 6th, $560, making a total claim of $973.40, for which he sued. On September 8, 1924, appellees S. B. Glass and E. M. Roberts Electric Company intervened in Eoff's suit, pleading, as did Eoff, the execution of the building contract and the surety bond, and further the publication of August 7, 1924, of notice of the filing of Eoff's suit. By their plea of intervention they adopted the allegations of Eoff's petition. E. M. Roberts Electric Company asserted a claim of $138.90 for supplies furnished the contractor, which it was alleged were furnished within the conditions of the bond. Intervener Glass claimed $829.70 as wages from April 1, 1923, to July 2, 1923. He also alleged that his employment began on August 1, 1922, and continued through to July 2, 1923, but made no claim for wages prior to April 1st. The construction company made no answer. The issues raised by the answer of the surety company are given in connection with the discussion of its propositions of error. The trial was to a jury and verdict instructed in favor of the claimants for the amounts respectively claimed by them. Appellant concedes that the questions raised by it are upon the undisputed facts, and that it has no complaint that the court improperly took from the jury any fact issue.

As the Moore Construction Company has made no complaint against the judgment in favor of appellees, as against it the judgment of the lower court, in so far as it affects this company, is in all things affirmed.

Appellant correctly asserts that the trial court erred in receiving secondary evidence of the contents of the building contract and of the nature and conditions of its bond. The State Normal School Board of Regents was the proper custodian of the original contract and bond. In his efforts to comply with article 5161, Revised Statutes 1925 (old number 6394g), the attorney for appellees requested of H. A. Turner, secretary of the Board, certified copies of the contract and bond. The secretary was unable to comply with this request because the original of these papers had been delivered by the Board to Judge A. B. Watkins, one of its members and its attorney, in order that he might take the necessary steps to protect the Board's interests after the contractor had defaulted. Before this case was tried Judge A. B. Watkins died, and as a witness for appellees the secretary of the Board testified that he thought Judge Royal Watkins of Dallas, the son of Judge A. B.

Watkins, had possession of the original papers. It was shown that Judge Royal Watkins was living and was in the city of Dall at the time this case was tried. No dema.. was ever made for the original papers of Judge A. B. Watkins during his lifetime nor of his heirs or legal representatives after his death, nor was such demand made of Judge Royal Watkins, though the depositions of the secretary were on file with the papers of this case for some time before the case was tried. But appellees made demand of appellant for possession of the original papers and gave appellant notice that secondary evidence would be offered of their contents if the originals were not produced. The record reflects that appellant never had possession of the original papers. In their efforts to locate these papers, after inquiring of various' persons, appellees found in the hands of the architect, W. E. Ketchum, carbon copies of the originals, which purported to bear the signatures of the makers. These papers were loaned to counsel for appellees, who had his stenographer make copies thereof and then, on demand of Mr. Ketchum, returned the original carbons to him. Upon showing these facts appellees then offered in evidence the copies made by the stenographer of their attorney, which the court received over appellant's objections that they were not the best evidence, that they were hearsay, that only certified copies made under the provisions of article 5161 were admissible in the absence of the originals, and that a proper search had not been made to justify the admission of secondary evidence, and that notice had not been served upon the proper parties to warrant the admission of secondary evidence. Appellees offered no other evidence of the contents and nature of the contract and bond, except copies of the carbon copies made by the stenographer.

Article 5161 has no application to the facts of this case. It was made to appear affirmatively that the Board did not have possession of the original papers, and was therefore not in position to furnish appellees the certified copies provided for by this article. Notice to appellant to produce the originals was not a sufficient predicate for the admission of secondary evidence, since it appeared beyond controversy that appellant never had possession of these papers. In American Surety Co. v. State, 277 S. W. 790, 791, speaking for this court, Mr. Justice O'Quinn said: "In order to admit secondary evidence of the existence and contents of an instrument, there must be some proof that the party upon whom the notice to produce is served had control of the instrument. 2 Jones on Evidence. 286, § 221; G. H. & S. A. Ry. Co. v. Arispe, 5 Tex. Civ. App. 611, 23 S. W. 928, 24 S. W. 33; Trimble v. Edwards, 84 Tex. 497, 500, 19 S. W. 772." Appellant is also correct in saying that a sufficient search was not made for the original papers to warrant the introduction

of secondary evidence. On this issue our Supreme Court, in Vandergriff v. Piercy, 59 Tex. 372, said: "There must be shown in cases where it is necessary that there has been a notice to produce given. It must also be shown that there has been diligent search and inquiry made of the proper person and in the proper places, for the lost deed. The loss of it must be proved, if possible, by the person in whose custody it was at the time of the loss, if such person be living, and if dead, application should be made to his representatives, and search made among the documents of the deceased." Hill v. Taylor, 77 Tex. 299, 14 S. W. 366, and Trimble v. Edwards, 84 Tex. 497, 19 S. W. 772, cite the Vandergriff Case in support of the same proposition. The mere statement of the facts in the case before us shows that appellees made no effort to comply with this fundamental rule. The error in the reception of this secondary evidence necessarily results in the reversal of the judgment of the trial court, in so far as it affects appellant. As the case must be tried again, it is proper that we dispose of certain other propositions advanced by appellant.

Since, on the undisputed facts, appellees Glass and E. M. Roberts Electric Company did not intervene in the suit filed by Eoff until more than a year after the contractor had abandoned its contract, appellant contends that these claims were barred by the statute of limitation of one year as provided by article 5162, Revised Statutes 1925. According to appellant's contention, the contractor abandoned its contract on or about the 1st of April, 1923. According to the pleading and contention of appellees, as stated in their brief, the contract was abandoned on or about the 7th day of July, 1923. As Eoff filed his suit on the 20th day of August, 1923, and as the interventions under discussion were not filed until September 8, 1924, under any construction of the evidence these interventions were not filed until more than a year after the contract had been abandoned. Appellees, by the affirmative allegations of their petitions in intervention, base their causes of action upon articles 5160–5164, and therefore the causes of action asserted were within the bar of the one-year statute of limitation prescribed by article 5162. Van Zandt v. School District (Tex. Civ. App.) 283 S. W. 626. However, the citation of authority is not necessary on this point, since, as we understand the brief of appellees, they do not contend to the contrary. Under the briefs of both parties the question simply is: When did the statute begin to run; when the contractor abandoned the contract, as appellant contends; or when appellant, under the conditions of its bond, completed the building and delivered it as a completed job to the Board in May, 1924, as appellees contend? Southern Surety Co. v. Guaranty State Bank of De Leon (Tex. Civ. App.) 275 S. W. 436, 439, seems to us to support appellant's proposition. There the contractor abandoned the contract on the 8th day of September, 1922. On that date, at the request of the county, the surety company took up the unfinished work on the road and proceeded with the same to completion on May 5, 1923. On the 22d of October, 1923, more than one year after the contract had been abandoned, but only from May 5, 1923, to October 22, 1923, after the surety company had completed the work, Higginbotham, who was suing the surety company for supplies furnished the contractor, by an amended cross-bill, sued for the first time for certain feed and groceries accounts amounting to about $6,000. Against these items the surety company specially pleaded the statute of limitation of one year as prescribed by article 5162. In sustaining this plea the court said: "The latter portion of article 6394h, R. S. (Vernon's Sayles' Ann. Civ. St. 1914) applicable to the point presented, provides: 'Provided that if the contractor quits or abandons the contract before its consummation, suit may be instituted by any of such creditors on the bond of the contractor, and shall be commenced within one year after abandonment of said contract, and not later.' Here the contractors abandoned the contract before its consummation; Higginbotham was a creditor of the contractor; its suit on the items as against the surety company was on the bond, and the suit was not commenced within one year after the abandonment of the contract by the contractors. We are of the opinion that the statute above quoted was not tolled by reason of the surety company taking over the abandoned contract and going forward with the work. The cause of action on the items of indebtedness arose, if at all, on the 8th day of September, 1922, and were barred one year next thereafter. The above quoted portion of the article of the statute, in our opinion, is not affected by the previous provision of the same article, or by any other article of the statute, as insisted by appellee, Higginbotham. We have carefully considered, in this connection, the whole chapter 3, tit. 113, Vernon's Sayles' Texas Civil Statutes 1914, same being chapter 99, 33d Leg. (1913) p. 185."

Appellees deny the soundness of this decision and its application to their interventions for the following reasons: They say under provisions of article 5161 they had no cause of action against the surety company until after the contract had been completed and the claims of the state had been adjusted; that they could not sue until six months after the building had been completed by the surety company; that a suit brought before that time was subject to abatement and was insufficient to support a judgment for material furnished; that Eoff's suit was prematurely brought and was insufficient to support their pleas of intervention; that they could not have legally intervened in any suit until six months after the work had been completed.

None of these propositions were discussed by Judge Walthal in the case just cited, but he said that all such objections to his conclusions had been overruled. It was his conclusion that the limitation provisions of article 5162 was not "affected by the previous provision of the same article, or by any other article of the statute." Appellees say further that the case cited does not sustain appellant's proposition of limitation because it construed the statute only as it related to the filing of the original suit, and not to the filing of interventions. Appellees contend that where suit has been duly filed upon an abandoned contract article 5162 has no application. The material provisions of this article on these propositions are as follows: "Where suit is so instituted by a creditor or by creditors, only one action shall be brought, and any creditor may file his claim in such action and be made party thereto within one year from the completion of the work under said contractor and not later."

It is thus expressly provided that interventions must be filed within one year "from the completion of the work under the contractor." No reference is made to the completion of the work by the surety. We think the legislative intent was that all claims against the bond of a defaulting contractor must be duly filed within one year from the date of the abandonment of the contract. No sound principle would bar one claim because not filed within a year and give an indefinite time, or the two or four years' statute, within which to file all other claims. Then we think the cited case is directly in point against appellees on their proposition. The items in the Higginbotham claim sued upon originally were not barred. All items not involved in that suit, but sued upon after more than one year, were barred. Now if another furnisher of supplies could intervene more than a year after the contract was abandoned, and thereby save his claim from the bar of limitation, it would be a harsh construction to bar the claims of the original plaintiff not involved in his original petition. Because it is manifest that interveners Glass and E. M. Roberts Electric Company cannot take their claims out of the statute of limitation upon another trial, it is our order that judgment be here rendered in appellant's favor as to these two interventions.

■ As a matter of law appellant says that judgment should be rendered in its favor as against appellee Eoff. As to that portion of Eoff's claim maturing before April 1st, appellant says it was made to appear as a matter of law that he left it in the hands of the contractor as a loan, merely as an extension of credit, under conditions taking it out of the protection of the bond. This proposition is not sound for two reasons. First. Under the testimony of Eoff this unpaid salary was not due and was not to become due until after the contractor completed his work. Second.

Manifestly there was no intention on the part of Eoff in settling with the contractor to waive his rights under the bond. In Fennell v. Cement Co. (Tex. Civ. App.) 209 S. W. 796, 798, the furnisher of supplies took a note for an unpaid balance, thereby giving and extending credit to the contractor. The contention was made there, as here, that the taking of this note relieved the surety of liability for this claim. The court overruled that proposition, saying: "Appellants also insist that they were released from liability on the bond by the taking of notes from Fennell and extending the time for the payment of his debt. In support of this proposition they invoke the well-established rule applied to contracts evidenced by promissory notes and similar instruments. It is not contended that any injury resulted to the appellant by reason of the taking of those notes or the extension of time given. In the United States Fidelity & Guaranty Co. v. United States, 191 U. S. 416, 24 S. Ct. 142, 48 L. Ed. 242, a similar objection was considered at length and overruled by the federal Supreme Court. The subject is so fully discussed in that opinion that it is unnecessary to add more."

■ As to that portion of Eoff's claim for labor performed from April 1st to July 7th, appellant says it was not liable on the proposition that a contractor, as principal, cannot bind the surety company by promises to nor agreements with one having knowledge of the abandonment of the contract. On authority of United States Use of District of Columbia v. Bayly, 39 App. D. C. 105, 41 L. R. A. (N. S.) 422, Hansen v. Remer, 160 Minn. 453, 200 N. W. 839, and Equitable Surety Co. v. United States, 234 U. S. 448, 34 S. Ct. 803, 58 L. Ed. 1394, the abstract soundness of this proposition may be conceded, but for the following reasons appellant cannot have judgment here rendered in its favor:

First. Appellee contends that the contract was not abandoned until these services had been performed; that is, until the 7th day of July, 1923. Of course, if on another trial the evidence raises that issue and it is found by the jury in favor of appellee, the proposition goes out of the case.

■ Second. If it be conceded that the work was abandoned during the first days of April, yet the evidence clearly raised the issue that appellant knew that Eoff was on the job and performing services under some sort of contract with the contractor. If these services were for the benefit of appellant, it could not knowingly receive them and then refuse to make payment. Hansen v. Remer, supra. This raises an issue of fact for the jury, provided Eoff, upon another trial, should amend his pleadings so as to raise this issue as an element of his cause of action.

■ Should the jury find that the contract was abandoned in April and that appellant knowingly received the benefit of Eoff's services, the remaining question arises: Is it lia-

ble to Eoff under the contract made by him with the contractor, or is it liable only on quantum meruit? Appellant says the amount charged against it by Eoff for the services rendered is excessive and unconscionable for the character of the services rendered. We cannot agree with appellant that the amount charged against it by Eoff for the services from April to July are so excessive as to be manifestly wrong or as to work an injustice against it. We think, if liable at all, appellant is liable upon the contract made by the contractor with Eoff. Seeing Eoff on the job and reaping the benefit of his services, it must pay according to Eoff's contract. If appellant had the opportunity to acquaint itself with his basis of compensation, it rested under the duty of discharging him if not satisfied therewith. Not having done so at that time, it cannot now question his contract. Of course, what has just been said presupposes that the jury will find these fact issues in appellant's favor. Should the jury find that the contract was abandoned in April and further find that appellant did not know or in the exercise of ordinary care could not have known that Eoff was upon the job then, under the authorities cited supra, it should not be held liable to him for the services rendered after the contract was abandoned.

Reversed and rendered in part, and in part reversed and remanded.