## MILLER MANAGEMENT CO., Inc., v. STATE.

### No. 11294.

Court of Civil Appeals of Texas. Galveston.

Feb. 5, 1942.

Rehearing Denied Feb. 26, 1942.

Houghton Brownlee, of Austin, and Martin, Moore & Brewster and Harris Brewster, all of Fort Worth, for appellant.

Gerald C. Mann, Atty. Gen., and Geo. W. Barcus, Frederik B. Isely, Walter R. Koch, and Ocie Speer, Asst. Attys. Gen., for appellee.

MONTEITH, Chief. Justice.

This suit was instituted by appellee, the State of Texas, against appellant, Miller Management Company, Inc., a Tennessee corporation, for the recovery of penalties for the alleged transaction of intrastate business in Texas without first having secured the permit required by law. The State also sought an injunction restraining appellant from transacting intrastate business in Texas without a permit and from disposing of and removing its papers and records from the state, a judgment establishing a lien against appellant's property, and the appointment of a receiver.

Appellant answered by a general demurrer, a general denial and exceptions.

In answer to special issues submitted, the jury found, in substance, that appellant had been engaged in intrastate business in Texas for a period of approximately 40 months from June 3, 1937, to October 1, 1940. It assessed penalties against appellant in the amount of $10,000. Judgment was rendered by the trial court in conformity with the verdict and for the injunction prayed for. A receiver was appointed by the court to take charge of all papers, records and property belonging to appellant situated in Texas.. Appellant appealed from this judgment to the Court of Civil Appeals at Austin. The case was transferred to this court under an equalization order of the Supreme Court.

This action was brought under the provisions of Article 1536, Vernon's Ann.Civil Statutes, as amended, which provides, in part, that if any foreign corporation shall transact intrastate business in Texas without first having obtained a permit to do so, it shall forfeit to the State not less than $100 nor more than $5,000 for each month or fraction thereof it shall transact such business without a permit. The article provides that a suit to recover these penalties shall be brought by the Attorney General in Travis County, that the State shall have a lien on all properties of the corporation for said penalties, and that the corporation may be enjoined from transacting such business without a permit.

Appellant was chartered by the State of Tennessee with a capital stock of $10,000. It had never secured a permit to transact intrastate business in Texas. Prior to the trial of the case, appellant presented to the trial court proof of the fact that the corporation had been dissolved after the filing of this suit and that a trustee had been appointed to take charge of its properties in connection with a motion to dismiss or abate the suit. Upon the refusal of the court to grant its plea in abatement, appellant presented an application for a continuance of the case until the trustee appointed to take charge of its properties had been made a party to the suit.

The controlling questions presented in the appeal are: (1) Whether the court erred in refusing to abate the suit upon presentation of proof of the dissolution of the corporation and the appointment of a trustee to take charge of its properties, and in refusing to continue the suit until said trustee had been made a party to the suit; (2) whether the points in appellant's brief

upon which its appeal is predicated must be disregarded by this court for the reason that they violate Subdivision b of Rule 418, Texas Rules of Civil Procedure; and (3) whether error was committed by the trial court in permitting the introduction of certain testimony by appellee, over appellant's appropriate objections thereto.

Appellant's contention that this action abated upon the dissolution of appellant, a Tennessee corporation, and the court's refusal to grant a continuance for the purpose of making the trustee appointed to take charge of its properties a party to the suit, cannot be sustained.

While it is true that, under the common law, the death of a person or the dissolution of a corporation abated all pending actions against them, remedial statutes providing for the continuance of the existence of a corporation either for a limited time or until its affairs can be wound up and providing that such dissolved corporation can sue and be sued in actions arising prior to its dissolution have been enacted in both the States of Texas and Tennessee.

█ Appellant, a legal corporation, having made a voluntary dissolution of its corporate entity in the State of Tennessee, the legal effect of the dissolution must be governed by the Tennessee statutes.

Article 3756 of the Tennessee Code provides that the filing of a certificate of dissolution of a corporation in the office of the Secretary of State shall operate as a surrender to the State by the corporation of all its franchises and privileges and that its right to continue the corporate business shall cease and determine. It provides, however, that the rights of creditors of the corporation shall not be prejudiced thereby and that the corporation shall continue to exist as long as is necessary for the purpose of winding up its affairs.

Article 3757 of the Tennessee Code provides in part that: "* * * no suit pending on behalf of or against said corporation at the time of the surrender of its charter in the manner herein provided shall abate because of such surrender, but may be prosecuted to final judgment or decree."

█ It is the established rule in this state, as well as in other jurisdictions, that the questions of whether a foreign corporation continues in existence for purposes of pending suits is determined by the statutes and laws of the State in which the corporation was created. Oklahoma

Natural Gas Co. v. Oklahoma, 273 U.S. 257, 47 S.Ct. 391, 71 L.Ed. 634; Sinnott v. Hanan, 214 N.Y. 454, 108 N.E. 858; Harris-Woodbury Lumber Co. v. Coffin, C.C. W.D.N.C., 179 F. 257.

This rule is recognized in 11 Tex.Jur., page 210, § 523, in which it is said: "While the forfeiture of a company's permit is within the power of the Texas Courts, its dissolution is governed by the law of the State of its incorporation, and its dissolution is justiciable in the courts of that state. The effect of a dissolution as abating an action or allowing its maintenance against the dissolved corporation is likewise governed by the law of the incorporate state. * * *."

It is held in this state that a suit for personal injuries against a corporation survives the dissolution of that corporation and that the suit was properly brought against the corporation in its corporate name. West v. Jackson, Tex.Civ.App., 129 S.W.2d 811.

■ Under the above authorities, appellant having availed itself of the provisions for voluntary dissolution provided by said Articles 3756 and 3757 of the Tennessee Code, it must be governed by all parts of these statutes. It follows that if appellant, after such dissolution, was still a legal entity for purposes of pending suits by or against it under the Tennessee law, it was still a legal entity in Texas, where that cause was pending at the time of such dissolution.

■ Appellee contends that the points upon which appellant's appeal is predicated cannot be considered by this court, for the alleged reason that each of said points is multifarious and violates Rules 418(b), Texas Rules of Civil Procedure, in that they do not present a single question under each point as is required by the rules, but that, on the contrary, each of such points presents a multiplicity of points involving numerous rulings upon as many separate exceptions.

Section (b) of said Rule 418 provides that the brief of appellant shall contain "a statement of the points upon which the appeal is predicated, separately numbered, in short form and without argument, and germane to one or more assignments of error when assignments are required. Such points will be sufficient if they direct the attention of the court to the errors relied upon and they should ordinarily be so con-

cisely stated that they may appear, separately numbered, on a single page of the brief. * * *."

While this court and counsel for appellant have no precedent to follow in construing the quoted portions of said Rule 418, it is this court's conclusion that the words "separately numbered", taken in connection with the statement which follows "and germane to one or more assignments of error", cannot be construed to mean that a separate point is required for each ruling made by the trial court if a number of rulings are made involving the same legal question.

The stated purpose of the "points upon which the appeal is predicated" is to give the reviewing court a brief and clear statement of the legal questions involved in the appeal, the inference being that each point shall embrace a single legal question, whether it involves one or more rulings made by the trial court. Brevity and the avoidance of repetition in briefs is emphasized throughout those rules which relate to the briefing of cases.

Rule 422, Texas Rules of Civil Procedure, provides that: "The purpose of briefs being to acquaint the court with the points relied upon, the manner in which they arose * * *, a substantial compliance with these rules will suffice in the interest of justice * * *."

■ While certain of appellant's points involve several rulings of the trial court and appellant's exceptions thereto, each of said points involves one question of law on the appeal. The record shows that each ruling by the trial court and the exception urged by the appellant thereto under each point is presented by separate assignment of error and that appropriate reference is made in its brief to the assignment in connection with the point referred to.

This court has had no difficulty in determining the question raised and relied upon by appellant under each of the points upon which its appeal is predicated. The method adopted has not only not obscured the questions presented, but the manner in which they have been presented by appellant in its brief has materially reduced the volume of the brief and has assisted the court in reaching its conclusions under each point. It follows that appellee's contention in this regard must be overruled.

Appellant's contention that error was committed by the trial court in the admission of certain testimony both written and parol, over its appropriate objections and exceptions, must be sustained.

Appellee alleged, in substance, that appellant, acting by and through its employees, J. W. Florence of Fort Worth and R. M. Smith of Dallas, without having obtained a permit to do so, had actively engaged in intrastate business in the State of Texas in managing, auditing and supervising the operation of certain listed finance and brokerage companies, located in the state, including the employment, transfer and discharge of employees and the checking of the loans made by the companies. That appellant was the owner of the property, assets and business of each of the listed companies, that it operated said companies in the name of its officers, and that all employees of the listed companies were in truth employees of appellant.

Under its point No. Six, appellant contended that certain employment contracts and group insurance certificates, offered by the State for the purpose of proving that certain employees of the listed loan companies were employees of appellant, were inadmissible over appellant's objections that there was no pleading to support such evidence and that the oral testimony introduced by the State of employees of listed companies in reference to the contents and construction of purported written employment contracts with appellant were inadmissible over the defendant's objections that the contracts themselves were the best evidence.

More specifically, the State was permitted to introduce in evidence over appellant's objections that the contracts themselves were the best evidence and other objections hereinafter set out: (1) the testimony of the witness, Ted C. Buerger, that he had filled out an application for employment with the Finance Service Company, of San Antonio, one of the companies listed as being managed and controlled by appellant, which contained the heading "Miller. Management Company, Inc., Application for Employment." He testified that he had turned the application over to the manager of the company. No attempt was made by the State to produce the contract in question or to account for its nonproduction. (2) The court permitted the introduction of an instrument which purported to be a contract of employment between the witness Buerger and appellant. It purported to have been signed for appellant by one "R. M. Smith, Supervisor." Appellant objected to the introduction of the testimony on the grounds that it was not shown that R. M. Smith had the authority to execute any contract for or to bind appellant and that it was hearsay. (3) The witness Buerger was permitted, over appellant's objections, to testify that he had signed, as a witness, employment contracts of other employees of the Service Finance Company, F. Schmide and Gene Curtis that were similar to his contract with said company except for the names of the employees. He testified that he had never seen the contracts again. They were not introduced in evidence and the record does not show that notice was given to appellant to produce them or that any effort was made to procure the originals. (4) Appellee's witness, C. H. McIver, was permitted to testify that he had a contract of employment with appellant while he was working for Industrial Finance Company of San Antonio, another of said listed companies. The State neither offered nor gave an excuse for failure to offer this contract in evidence. (5) Appellee's witness, Ben Young, was permitted to testify that while he was working for Southern Finance Company, at Beaumont, another listed company, he had a contract of employment with appellant similar to the contract between Buerger and appellant. This contract was not offered in evidence. The only excuse for not offering it being that he had left it in the drawer of his desk in the office at Beaumont. (6) Appellee's witness, Ben Young, was permitted to testify that Miss Morgan and Miss Hays, who were also employed by the Southern Finance Company at Beaumont, had employment contracts similar to his. The absence of these contracts was not accounted for and no excuse was given by appellee for its failure to introduce them, and that no predicate had been laid to authorize the introduction of secondary evidence thereof.

■■ It is a settled rule of evidence that parol evidence in reference to the contents of a written instrument is inadmissible in the absence of a legal excuse for failure to produce the writing, and that to entitle a party to introduce secondary evidence of the contents thereof it must be shown either that the writing itself has been lost and cannot be found after diligent search (Southern

Surety Co. v. Eoff, Tex.Civ.App., 22 S.W. 2d 964), or that it is in the possession of the opposing party and that proper notice had been given to produce it. American Surety Company of New York v. State, Tex.Civ.App., 277 S.W. 790.

The record in the instant case does not show any effort on the part of appellee to obtain the originals of any of said instruments, or any excuse for their nonproduction.

Under its seventh point, appellant complains of the action of the trial court in permitting the introduction in evidence by appellee of a letter purported to have been written by one I. Miller, who was alleged by appellee to have been the president of appellant company, to Mrs. Ben Young.

The letter in question was written on the stationery of the "Miller Management Company, Inc., 701 Walker Building, Nashville, Tennessee," appellant's home office. It was introduced by appellee for the obvious purpose of showing that the said Southern Finance Company of Beaumont, by whom her son, Ben Young, had been employed and had been discharged, was under the management and supervision of appellant and that appellant had the right to discharge the employees of the company. It purported to give the reasons for the discharge of Ben Young and expressed regret that the writer could do nothing in her son's behalf. Mrs. Young, to whom the letter was addressed, did not testify, either personally or by deposition. The only testimony relative to the history and source of the letter was the testimony of the witness, Ben Young, to the effect that his mother had received it from I. Miller and that she had given it to him. He testified that he did not know I. Miller and that he had never seen him write his name but that he had seen the signature of I. Miller a number of times on letters in the office of Southern Finance Company. The signatures to the letters to which he referred were not introduced in evidence and were not shown to be genuine. Appellant objected to the introduction of the letter for the reasons that the signature of I. Miller was not proven; that there was no proof that its author was acting in behalf of appellant or in the course of his employment, other than the statements in the letter itself, and that the testimony of Ben Young to the effect that his mother had received the letter from I. Miller was hearsay.

Where the genuineness of a letter is the subject of inquiry, the signature to the letter is the predominant factor, since by signing the letter the author thereof adopts as his own the language used in the body of the letter regardless of whether such language be printed, typewritten, or written by hand. Where the genuineness of the document is disputed, the genuineness of the signature to the document cannot be proved by the testimony of a witness to the effect that the signature to the document is the same as an undisputed signature exhibited to him, unless the disputed document, together with the signature thereto, is also produced. Gibralter Colorado Life Co. v. Taylor et al., 132 Tex. 328, 123 S.W.2d 318.

The court, in the case of Gibralter Colorado Life Co. v. Taylor, supra, based its opinion upon Article 3737b of Vernon's Civil Statutes, which reads: "In the trial of any civil case, it shall be competent to give evidence of handwriting by comparison, made by experts or by the jury. The standard of comparison offered in evidence must be proved to the satisfaction of the judge to be genuine before allowing the same to be compared with the handwriting in dispute."

In the instant case no standard of comparison such as is required under said Article 3737b was produced by appellee. The only proof offered being the testimony of Ben Young that the signature of I. Miller to said letter was the same as the signature to other letters he had seen in the office of the company which were not produced in court. Under the above facts, the letter in question was not admissible for any purpose.

Since the letter in question purported to have been written by the alleged president of appellant company in reference to matters upon which the State based its suit for penalties, it is probable that the verdict of the jury was based, to some extent at least, upon said letter and its contents, and upon testimony in reference to the contents of the other written instruments illegally introduced in evidence, all of which were, under above facts, incompetent testimony and highly prejudicial to appellant's defense.

It follows from above conclusions that the judgment of the trial court must be reversed and the cause remanded for a new trial.

224

Other assignments brought forward have not been considered for the reason that they will, in all probability, not arise in another trial.

Reversed and remanded.