AMERICAN BIOMEDICAL
CORPORATION,
Appellant,

v.

John H. ANDERSON, Appellee.

No. 8732.

Court of Civil Appeals of Texas,
Amarillo.

Jan. 10, 1977.

Woodburn & Sullivan, William C. Woodburn, Dallas, for appellant.

James S. Robertson, Jr., Dallas, for appellee.

REYNOLDS, Justice.

For its breach of a written employment agreement, American Biomedical Corporation was adjudged liable to John H. Anderson in the sum of $23,103, together with pre-judgment interest, representing Anderson's unpaid salary, less his earnings from other sources during the remainder of the primary term of the agreement. The ultimate questions are whether the agreement was terminated by Anderson's acceptance of new and independent employment or by release. We agree with the trial court's determination that the agreement was not terminated. Affirmed.

This litigation grew out of Anderson's association with American Biomedical Corporation, American Medical Computer Centers, Inc., and Medical Computer Systems, Inc., which, for brevity, will be referred to as ABC, AMCC and MCSI, respectively. ABC, which provides medical laboratory,

biomedical and computer services to the public directly and through wholly owned subsidiaries, formed AMCC, a wholly owned subsidiary, to acquire the assets of Health Management Systems, the president of which was John H. Anderson. The acquisition was on 27 December 1968 and on the same day ABC, being also interested in securing Anderson's personal services, entered into a written employment agreement with Anderson. The agreement was for a term of five years beginning 1 January 1968 and provided that for the annual sum of $35,000 Anderson shall perform "such duties as may be assigned to him from time to time by, and subject to the supervision and control of, the Board of Directors of Employer (ABC) or the chief executive officer thereof," with an initial assignment to AMCC as president. The agreement has no provision for its assignment.

A few months after Anderson assumed the presidency of AMCC, he became a member of the board of directors of the parent company, ABC, reporting to Clinton Howard, President and Chairman of the Board of ABC, and to Gifford Johnson, Executive Vice President of ABC. During the early fall of 1969, while Anderson was a member of the board of directors and attending meetings, it was made known to ABC's board that AMCC had an appetite for money to fund its development that ABC was finding difficult to meet. AMCC had begun to owe ABC sizeable sums of money at an increasing monthly rate of from $40,000 to $50,000. After several meetings of ABC's board of directors and executive committee, it was concluded in December, 1969 to sell AMCC to MCSI. Prior to the sale, there was a telephone conversation between Gifford Johnson of ABC in Dallas and Anderson of AMCC in Chicago. Anderson was informed of ABC's intent to sell AMCC to MCSI, and there was a discussion of the funding of AMCC and MCSI's desire that Anderson continue as AMCC's president.

The sale was effected 31 December 1969. Following the sale, ABC owned the second largest number of outstanding shares of MCSI stock, and Howard and Johnson of ABC became directors of MCSI. On 8 January 1970, ABC, acting through Howard, and MCSI, acting through its president James H. Foster, Jr., executed a letter of agreement. One of its provisions read that ABC assigns all of its right, title and interest in its employment agreement with Anderson and will cause Anderson to consent to the assignment. Anderson denied knowledge of the letter of agreement until this litigation commenced and stated that he was not asked to and did not consent to the assignment of the employment agreement.

After the sale, Anderson's duties with AMCC did not change, but he began reporting to Foster, MCSI's president, and no longer reported to either Howard or Johnson. Anderson was paid by AMCC payroll checks, routinely processed and mailed from Dallas, which were signed by Howard prior to 1 January 1970 and afterwards by Foster.

On 29 March 1970, Anderson was elected to the position of Chief Operating Officer and Executive Vice President of MCSI at an increased salary of $40,000 per annum, which was to be inclusive of all salaries paid to Anderson by either AMCC or MCSI. Anderson testified that Gifford Johnson "went out of his way" to congratulate him on the job he was doing at MCSI so that "we would have a possibility of surviving in the corporation."

On or about 1 February 1972, Anderson was asked by MCSI to resign his duties with AMCC and MCSI. He refused to sign a prepared instrument stating that his employment agreement was terminated when he agreed to become Executive Vice President of MCSI. He did sign an agreement dated 8 February 1972 in which it was stated that he resigned as of 1 February 1972 and that MCSI agreed to pay Anderson his normal monthly salary of $3,333 for three months ending 30 April 1972 conditioned upon his availability for consultation during that period. By that agreement, MCSI and its subsidiary released Anderson of any and all claims and Anderson released

"MCSI and its subsidiary from any and all claims he may have against them, including but not limited to the written contract dated December 27, 1968 with regard to American Biomedical Corporation." It was Anderson's testimony that at the time he signed the release he had no knowledge of ABC's assignment of his employment agreement to MCSI and no reason to believe that an assignment had been or was to be made.

About 2 or 3 May 1972, Anderson informed Clinton Howard, ABC's president, that he was ready to accept a new assignment under his employment agreement with ABC. Howard responded that ABC had no obligation under the agreement to Anderson. Thereafter, Anderson received a 7 March 1973 letter from Gifford Johnson, ABC's Executive Vice President and director, stating that ABC was relieved of further obligation under Anderson's employment agreement because ABC had assigned it to MCSI and Anderson accepted the assignment by going to work for MCSI.

Trial was before the court. Judgment was rendered 27 October 1975 decreeing that Anderson recover from ABC the sum of $23,103 with pre-judgment interest.

The trial court made and filed findings of fact, numbered among which are these: (10) Anderson was neither notified of ABC's assignment of the employment agreement nor asked to accept MCSI as his employer in substitution for ABC; (11) after the sale of AMCC to MCSI, Anderson continued to perform the same duties; (12) Anderson's election as Executive Vice President and Chief Operating Officer of MCSI, as well as president of AMCC, at an annual salary of $40,000 was inclusive of all salaries paid him by either AMCC or MCSI; (13) at the time Anderson became Vice President of MCSI, he had no reason to believe the employment agreement would be terminated by his acceptance of the position; (19) at the time of the 8 February 1972 release, Anderson had no knowledge of, nor any reason to believe, that an assignment had been or was to be made; (22) ABC's 29 March 1973 notification was the first notice Anderson had of the assignment; and (25) Anderson performed all duties assigned to him under the employment agreement, he did not give ABC any cause to terminate it, and he was ready, willing and able to perform under the agreement for the remainder of its term.

The court filed, among others, these conclusions of law: (2) Anderson neither directly nor indirectly consented to ABC's assignment of the employment agreement; (3) Anderson did not after first learning of the assignment, ratify it; (4) he did not consent to the substitution of MCSI for ABC as the employer in the agreement; (5) his acceptance of the position of Executive Vice President and Chief Operating Officer of MCSI did not constitute such a new and independent employment that resulted in termination of the employment agreement; (6) the agreement continued in effect and bound ABC for its term; (7 & 8) ABC's failure to offer employment to or to pay Anderson during the remainder of the term after termination of his services for AMCC or MCSI constituted a breach of the agreement for which ABC is liable in damages; (9) Anderson's damages are $23,103; (11) the 8 February 1972 release was not a release by Anderson of any obligations of ABC to him under the agreement; and (12) Anderson is not estopped to enforce the employment agreement.

ABC attacks the judgment with eight points of error. The first six points, which are grouped into pairs in the statement and restatement are here quoted verbatim:

POINTS OF ERROR NOS. 1 and 2

Appellee Anderson knew or should have known that his employment agreement was being or had been assigned by Appellant ABC to Assignee MCSI and he thereafter either expressly or impliedly accepted the assignment and acknowledged the Assignee MCSI as his new employer in substitution of Appellant. All findings and rulings of the Trial Court to the contrary were error since there was factually insufficient evidence (Point 1) to support such findings and rulings and the greater weight and preponderance of

the evidence (Point 2) does not support such findings and rulings.

POINTS OF ERROR NOS. 3 and 4

The Trial Court's rulings (CL 3 and 4, Tr. 37) to the effect that Appellee Anderson did not ratify nor consent to the assignment of the employment agreement and the substitution of MCSI for ABC as the Employer under the terms of the employment agreement are in error because they are contrary to the greater weight and preponderance of the evidence (Point 3) and contrary to law (Point 4).

POINTS OF ERROR NOS. 5 and 6

Appellee in accepting new and different full-time employment with Assignee, MCSI, contrary to the terms of the employment agreement, voluntarily terminated the subject employment agreement. All findings of the Trial Court to the contrary were error since there was factually insufficient (Point 5) evidence to support such findings, and because the greater weight and preponderance of the evidence (Point 6) does not support such findings.

■ Anderson's sole response to these first six points of error is that they are multifarious and, therefore, insufficient as a matter of law. Rule 418(b), Texas Rules of Civil Procedure. Long established is the principle that a point of error is multifarious when it embraces more than one specific ground of error or when it attempts to attack several distinct and alleged errors or rulings of the trial court. *Hudspeth v. Hudspeth*, 206 S.W.2d 863, 868 (Tex.Civ. App.—Amarillo 1947, no writ). If so, it is not entitled to consideration, *Johnson-Sampson Construction Company v. W & W Waterproofing Company*, 274 S.W.2d 926, 930 (Tex.Civ.App.—Amarillo 1953, writ ref'd n. r. e.), unless the point involves only a single legal question. *Miller Management Co. v. State*, 159 S.W.2d 218, 221 (Tex.Civ. App.—Galveston 1942), *aff'd* 140 Tex. 370, 167 S.W.2d 728 (1943).

■ These six points of error, by merely questioning the evidentiary basis of "all findings" and "rulings" of the trial court,

offend the principle; nevertheless, following the teaching of *O'Neil v. Mack Trucks, Inc.*, 542 S.W.2d 112 (Tex.1976), and *Fambrough v. Wagley*, 140 Tex. 577, 169 S.W.2d 478 (1943), we have looked to the arguments to determine, as best we can, the grounds relied upon to show reversible error.

One argument is made in connection with the first four points. Another argument is addressed to points five and six, but it also encompasses point seven which disputes a legal conclusion drawn from a factual finding sought to be set aside under points five and six. It appears from these arguments—which are referenced to points said to be germane to findings numbered 10, 12, 13, 19, 22 and 25, and to conclusions of law numbered 2, 3, 4 and 5—that ABC is complaining of the factual insufficiency of the evidence to support the factual findings that Anderson had no notice of the assignment of the employment agreement, that he had no reason to believe an assignment had been or would be made, that he had no reason to believe the acceptance of the position with MCSI would terminate the agreement, and that Anderson did not give ABC any reason to terminate the agreement. ABC apparently does not argue the verity of the legal conclusions drawn from the factual findings; instead, it argues that the findings being incorrect, it was error to conclude that Anderson neither consented to nor ratified the assignment, or that his acceptance of the MCSI position did not terminate the agreement.

■ The evidence bearing on the findings was conflicting. It was the province of the trial court, as the judge of the credibility of the witnesses and privileged to accept or reject any part of their testimony, to resolve the conflicts. *McGee v. McGee*, 537 S.W.2d 94, 97 (Tex.Civ.App.—Amarillo 1976, no writ). With due regard for the trial court's prerogative, all of the evidence has been reviewed under the guidance of *Hall v. Villarreal Development Corporation*, 522 S.W.2d 195 (Tex.1975). With respect to the challenged findings, there is some evidence of probative force to support the

findings; the evidence in support of the findings is not so weak, or the contrary evidence is not so overwhelming, as to warrant the setting aside of the findings; and the findings are not so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. Given the validity of the factual findings, the conclusions are not an erroneous application of the law. *Edins v. Gunby*, 150 S.W. 974, 976 (Tex.Civ.App.—Dallas 1912, no writ).

By assuming the existence of a fact opposite to the one found by the trial court and challenging the court's "rulings to the contrary," ABC's eighth point has some of the vice inherent in its first six points. However, a study of the point and the argument isolates the single question whether Anderson's 8 February 1972 release of MCSI released ABC as a matter of law from all further liability under the employment agreement.

▬ An executory contract for personal services, as the one here is, cannot be assigned by the employer without his employee's consent, since everyone has a right to determine with whom he will contract. *Spengler v. Pitluk*, 261 S.W.2d 470, 471 (Tex.Civ.App.—San Antonio 1953, writ dism'd); *Oak Cliff Ice Delivery Co. v. Peterson*, 300 S.W. 107, 109 (Tex.Civ.App.—Dallas 1927, no writ). The trial court's findings that Anderson did not know of, consent to, or ratify ABC's purported assignment of his employment agreement to MCSI, which we have validated, precluded a valid assignment of the agreement. Anderson's release of MCSI, which had no obligations under the employment agreement, could not affect ABC's obligations thereunder. The eighth point of error is overruled.

The judgment of the trial court is affirmed.