Khaled ALATTAR, Appellant

v.

KAY HOLDINGS, INC., Appellee.

NO. 14–14–00792–CV

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed January 12, 2016.

---

Mark Harold Ritchie, Houston, TX, Brian Keller, Houston, TX, for Khaled Alattar.

J. Randle Henderson, Houston, TX, for Kay Holdings, Inc.

Panel consists of Justices Jamison, McCally, and Wise.

## OPINION

Martha Hill Jamison, Justice

In six issues, appellant Khaled Alattar challenges the trial court's grant of appellee Kay Holdings, Inc.'s special appearance. Concluding that Kay Holdings consented to personal jurisdiction in Texas, we reverse and remand.

## Background

Alattar and Amir Mireskandari became partners in LY Retail LLC (LY). The purpose of LY was to operate a website called LuxeYard selling luxury home goods. Mireskandari approached businessmen Kevan Casey and Frederick Huttner for assistance in raising capital for the business. Alattar alleges that Casey and Huttner used the investment opportunity to orchestrate a "pump and dump" scheme, which Alattar describes as "a conspiracy to fraudulently acquire the stock of a small publicly traded company, then artificially inflate—or 'pump'—the price of its shares through aggressive advertising, only to then rapidly sell—or 'dump'—the stock at the inflated price."

Casey and Huttner outlined a plan to finance LY by turning it into a publicly traded company through a reverse merger, which occurs when a private company is acquired by a non-operating public "shell" corporation and the owners of the private company exchange their ownership interest for the outstanding shares of the public company. In accordance with this plan, the shell corporation Top Gear acquired LY. After the merger, the company became LuxeYard. Alattar contends that after the merger, Casey, Huttner, and others, "financed and executed an aggressive marketing campaign designed to artificially inflate the price of [the] stock." Shortly thereafter, they purportedly "dumped a large volume of supposedly unrestricted shares ... that should have been restricted," "the stock price plummeted," and they "pocketed enormous profits."

Alattar filed this lawsuit against Casey, Huttner, and numerous others, including Kay Holdings, and brought causes of action for common law fraud, fraud by nondisclosure, statutory fraud, breach of fiduciary duty, violation of the Texas Securities Act, conspiracy, aiding and abet-

ting, unjust enrichment, money had and received, constructive trust, negligence, violations of RICO, and fraudulent transfer.[1] Kay Holdings filed a special appearance, challenging the trial court's personal jurisdiction on the basis that Kay Holdings is not amenable to suit in Texas. Kay Holdings submitted an affidavit in support of its special appearance, attesting that Kay Holdings (1) has never been domiciled in Texas; (2) does not own property in Texas and never has; (3) does not derive income from Texas and never has; (4) has no bank accounts in Texas and never has; and (5) does not have any employees or agents in Texas and never has. In response, Alattar argued, among other things, that Kay Holdings signed an agreement to purchase LuxeYard stock (the Subscription Agreement) that included a clause consenting to personal jurisdiction in Texas. Alattar attached a copy of the Subscription Agreement to its response that included a signature page containing the electronic signature of Kay Holdings' corporate representative, Robert Wheat. The trial court granted the special appearance.

1. Apparently, Kay Holdings purchased LuxeYard stock after the merger. Some causes of action are brought against Casey, Huttner, Top Gear, other defendants not pertinent to our discussion, "and each of the companies they control." It is not clear from the petition which companies were purportedly controlled by those defendants. Kay Holdings is not specifically mentioned in any causes of action, but those for conspiracy, aiding and abetting, negligence, and violations of RICO are brought against all defendants.

2. Alattar also challenges the trial court's grant of Kay Holdings' special appearance on the grounds that (1) Kay Holdings ratified the Subscription Agreement; (2) other defendants acted with actual authority as Kay Holdings' agents, thus imputing the personal contacts of the other defendants to Kay Holdings; (3) Kay Holdings ratified the agency of another

## Discussion

In his first issue, Alattar argues personal jurisdiction is established with respect to Kay Holdings because it consented to personal jurisdiction in Texas pursuant to the Subscription Agreement.[2] Kay Holdings argues that (1) Alattar did not allege facts sufficient to confer jurisdiction over Kay Holdings in Texas, (2) there is no evidence that the agreement Wheat admittedly signed included a clause consenting to jurisdiction, and (3) Alattar's claims are outside the scope of the consent to jurisdiction.[3] The consent to jurisdiction clause in the Subscription Agreement reads as follows:

> Each of the Parties submits to the jurisdiction of any state or federal court sitting in the State of Texas, in any action or proceeding arising out of or relating to this Agreement and agrees that all claims in respect of the action or proceeding may be heard and determined in any such court.

**Sufficient Jurisdictional Facts Alleged.** A plaintiff bears the initial burden of alleging facts sufficient to bring a

defendant that acted on its behalf and its contacts were imputed to Kay Holdings; (4) Kay Holdings waived or was estopped from contesting personal jurisdiction by refusing to provide jurisdictional discovery; and (5) the trial court abused its discretion in refusing to continue the hearing and disposition of the special appearance until Kay Holdings provided jurisdictional discovery. Because we conclude that Kay Holdings consented to personal jurisdiction in Texas, we do not reach these issues.

3. As discussed below, Wheat admitted sending signature pages to LuxeYard's attorney but denied having read the Subscription Agreement. Kay Holdings' apparent argument is that because Wheat did not read the agreement he signed, it may not have been a version that included the consent to jurisdiction.

nonresident defendant within the terms of the Texas long-arm statute. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex.2013). The burden then shifts to the nonresident defendant to negate all potential bases for personal jurisdiction the plaintiff pleaded. *Id.* We consider both the plaintiffs original pleadings and its response to the defendant's special appearance in determining whether the plaintiff satisfied its burden to allege jurisdictional facts. *Henkel v. Emjo Invs., Ltd.*, 480 S.W.3d 1, 7 (Tex.App.–Houston [1st Dist.] 2015, no pet.); *Max Protetch, Inc. v. Herrin*, 340 S.W.3d 878, 883 (Tex. App.–Houston [14th Dist.] 2011, no pet.).

In his live petition, Alattar pleaded that "a substantial part of the events or omissions giving rise to [his] claims occurred in Harris County, Texas." He brought causes of action against all defendants for the torts of conspiracy, aiding and abetting, negligence, and violations of RICO. He additionally brought various tort causes of action against other defendants and "each of the companies they control," but he did not specify which companies are controlled by those defendants. More importantly, in response to the special appearance, Alattar alleged, among other things, that Kay Holdings consented to personal jurisdiction in Texas by signing the Subscription Agreement, which included the clause set forth above agreeing to submit to the personal jurisdiction of any state or federal court in Texas "in any action or proceeding arising out of or relating to [the Subscription Agreement]."

■ A consent to jurisdiction clause is one of several ways a litigant may consent to personal jurisdiction in a forum. *Parrot–Ice Drink Prods. of Am., Ltd. v. K & G Stores, Inc.*, No. 14–09–00008–CV, 2010 WL 1236322, at *2 (Tex.App.–Houston [14th Dist.] Mar. 30, 2010, no pet.) (mem. op.) (citing *Burger King Corp. v. Rudzew-*

*icz*, 471 U.S. 462, 473 n.14, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). If a litigant signs a contract containing such a clause, then that litigant either has consented to personal jurisdiction or waived the requirements for personal jurisdiction in the forum or forums within the scope of the clause. *Id.* Accordingly, in alleging that Kay Holdings consented to jurisdiction by signing the Subscription Agreement, Alattar has alleged facts sufficient to establish that Kay Holdings is subject to personal jurisdiction in Texas.

■ **No Evidentiary Support for Inferred Finding that Jurisdictional Facts Were Negated.** Kay Holdings asserts that Alattar did not provide a signed Subscription Agreement and thus there is no evidence that Kay Holdings consented to jurisdiction. Alattar argues that Wheat admitted in a deposition that he signed and sent the Subscription Agreement signature page to LuxeYard's attorney.

The ultimate question of whether a court has personal jurisdiction over a nonresident defendant is a question of law we review de novo. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). However, if a factual dispute exists, we are called upon to review the trial court's resolution of the factual dispute as well. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002). When, as here, the trial court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the judgment that are supported by evidence. *Moki Mac*, 221 S.W.3d at 574.

The trial court's inferred factual findings are not conclusive and may be challenged for legal and factual sufficiency when this court has a complete record on appeal. *Bryan v. Gordon*, 384 S.W.3d 908, 913 (Tex.App.–Houston [14th Dist.] 2012, no pet.). When examining a legal sufficiency

challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex.2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* at 827. The evidence is legally sufficient if it would enable a reasonable and fair minded person to find the fact under review. *Id.* The factfinder is the sole judge of witnesses' credibility and the weight to be given their testimony. *See id.* at 819.

In a factual sufficiency review, we consider and weigh all the evidence, both supporting and contradicting the finding. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex.1998). We set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986). We may not substitute our own judgment for that of the trier of fact or pass upon the credibility of the witnesses. *See Ellis*, 971 S.W.2d at 407.

Along with his response to the special appearance, Alattar attached a copy of the Subscription Agreement with a signature page from Wheat containing his electronic signature and excerpts from Wheat's deposition. Wheat initially denied during his deposition that it was his signature on the basis that "it appear[ed] to be an electronic signature." [4] But he subsequently conceded that he returned signature pages for a Subscription Agreement to the attorney "which [he] didn't read."

■ The fact that Wheat's signature is electronic is of no moment. *See* Tex. Bus. & Com.Code § 322.007.[5] Wheat did not deny he provided his signature in electronic format. Accordingly, there is no evidence that Wheat did not sign the Subscription Agreement. Moreover, Wheat's failure to read the Subscription Agreement is not a basis to set aside the consent to jurisdiction. *See Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 425 (Tex.2015) ("Instead of excusing a party's failure to read a contract when the party has an opportunity to do so, the law presumes that the party knows and accepts the contract terms.").[6]

4. Kay Holdings argues that LuxeYard claims Wheat signed a Subscription Agreement dated December 15, 2011, which Wheat denied signing in an affidavit. But the signed Subscription Agreement submitted with Alattar's response is dated November 8, 2011. Wheat has not denied signing that agreement.

5. Under this section of the Business and Commerce Code, entitled Legal Recognition of Electronic Records, Electronic Signatures, and Electronic Contracts, an electronic signature is given the same effect as any other signature:
 (a) A record or signature may not be denied legal effect or enforceability solely because it is in electronic form.
 (b) A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation.

(c) If a law requires a record to be in writing, an electronic record satisfies the law.
(d) If a law requires a signature, an electronic signature satisfies the law.
Tex. Bus. & Com.Code § 322.007.

6. We further note that a party's failure to read an agreement when he had a reasonable opportunity to do so will not support a fraudulent misrepresentation claim. *Westergren*, 453 S.W.3d at 424–25. Wheat admitted that he received a copy of the Subscription Agreement: "I was emailed a subscription agreement in which I didn't read," so when he received the agreement, he easily could have determined whether it included a clause consenting to jurisdiction.

We conclude that Kay Holdings did not present evidence that the Signature Agreement, *admittedly signed by its representative*, did not include a clause consenting to personal jurisdiction in Texas. Accordingly, Kay Holdings did not meet its burden of negating Alattar's pleaded basis for jurisdiction arising from consent to personal jurisdiction, and the trial court's inferred finding to the contrary is not supported by legally and factually sufficient evidence.

■ **Scope of Jurisdictional Consent Encompasses Alattar's Claims.** Kay Holdings also argues that the consent to jurisdiction clause does not encompass Alattar's claims. We analyze such clauses under the general rules for contract interpretation. *Parrot–Ice Drink Prods.*, 2010 WL 1236322, at *4. We construe unambiguous contract language according to its plain language as a matter of law.[7] *See id.*

Kay Holdings argues that Alattar was required to sue for breach of the Subscription Agreement to enforce the consent to jurisdiction. We disagree. Kay Holdings agreed to submit to the jurisdiction of any Texas court "in any action or proceeding arising out of or relating to [the Subscription] Agreement." Courts interpreting similar language conclude that such clauses are broad and encompass all claims that have some possible relationship with the agreement, including those claims that may only "relate to" the agreement. *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 701

(Tex.App.–Dallas 2010, no pet.) (citations omitted) (interpreting identical language). The phrase "relates to" is very broad. *Id.* Thus, the Subscription Agreement's jurisdictional clause applies if the claims at issue arise under *or* have a connection with the Subscription Agreement. *See id.*

Kay Holdings cites several cases to support its contention that tort claims are only subject to *forum selection clauses* if they are parallel to a contemporaneously asserted breach of contract claim. We need not decide whether cases dealing with forum selection clauses are analogous to cases dealing with consent to jurisdiction clauses because none of the cases cited by Kay Holdings stands for the proposition that a tort claim cannot be subject to a forum selection clause without a corresponding breach of contract claim. Two of the federal cases note that claims arising out of a contractual relationship and implicating the agreement are subject to the contract's forum selection clause. *See MaxEn Capital, LLC v. Sutherland*, No. CIV.A.H–08–3590, 2009 WL 936895, at *7 (S.D.Tex. Apr. 3, 2009); *see also Tex. Source Group, Inc. v. CCH, Inc.*, 967 F.Supp. 234, 238 (S.D.Tex.1997). The other cited cases similarly stand for the unremarkable proposition that courts interpret unambiguous forum selection and consent to jurisdiction clauses according to their plain language under contract interpretation principles.[8]

Here, Alattar's claims all relate to the defendants' purported participation in the

---

7. 7 Neither party contends that the language of the consent to jurisdiction clause is ambiguous.

8. *See Hoffman v. Burroughs Corp.*, 571 F.Supp. 545, 547 (N.D.Tex.1982) (construing language of forum selection clause covering "any action relating to [agreement]" as broad enough to encompass claims of fraudulent inducement and breach of warranties); *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 677 (Tex.2009) (construing forum selection clause under contractual interpretation principles);

*Parrot–Ice Drink Prods.*, 2010 WL 1236322, at *4 (construing consent to jurisdiction clause under contractual interpretation principles); *RSR Corp.*, 309 S.W.3d at 700–01 (construing language "[a]ll disputes hereunder" in forum selection clause); *Accelerated Christian Educ., Inc. v. Oracle Corp.*, 925 S.W.2d 66, 72 (Tex. App.–Dallas 1996, no writ) ("Pleading alternate noncontractual theories of recovery will not alone avoid a forum selection clause if those alternate claims arise out of the contractual relations and implicate the contract's

aforementioned "pump and dump" scheme. The Subscription Agreement authorized Kay Holdings to invest in LuxeYard by purchasing stock. This stock purchase investment forms the basis for Alattar's claims. We thus conclude that Alattar's claims have a connection with the Subscription Agreement. Thus, they relate to the agreement and therefore fall within the scope of the consent to jurisdiction clause. *See RSR Corp.*, 309 S.W.3d at 704.

### Conclusion

We conclude that Kay Holdings consented to personal jurisdiction in Texas and the trial court erred in granting its special appearance. We sustain Alattar's first issue and need not reach his remaining issues challenging the trial court's grant of the special appearance. We reverse the trial court's order granting the special appearance and remand this case for proceedings consistent with this opinion.

terms."), *overruled in part on other grounds by In re Tyco Elecs. Power Sys., Inc.*, No. 05–04–01808–CV, 2005 WL 237232, at *4 (Tex.App.–Dallas Feb. 2, 2005, orig. proceeding [mand. denied] ) (mem.op.).