# NO. 12-20-00060-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *INTERTEK ASSET INTEGRITY MANAGEMENT, INC.,* **APPELLANT** | *§* | *APPEAL FROM THE 7TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *DARRIN TODD DIRKSEN,* **APPELLEE** | *§* | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Intertek Asset Integrity Management, Inc. appeals from a summary judgment in favor of Darrin Todd Dirksen. We affirm.

## BACKGROUND

In July 2014, Dirksen entered an employee agreement with Hi-Tech Testing Service, Inc., Intertek's predecessor. The agreement contained the following clauses:

2. You agree to work only for Hi-Tech during the term of your employment, meaning you agree not to engage in or provide services or other assistance to any business which competes with Hi-Tech during your employment by Hi-Tech. You acknowledge and agree that Hi-Tech is engaged in a highly competitive business and that Hi-Tech spends significant time and resources developing close national and local client relationships, confidential contacts, and valuable job leads and that this, and other confidential information belonging to Hi-Tech and its clients necessarily will be revealed to you during your employment after execution of this Agreement. Because you will now be working in a position of trust and confidence with access to and use of this information, you agree that for one year following your last day of employment with Hi-Tech, you will not, directly or indirectly, compete with Hi-Tech in any way within fifty (50) miles of any Hi-Tech office in which you worked or which you managed during the two years preceding your departure from Hi-Tech. For the purposes of this Agreement, "compete" shall mean, either directly or indirectly as an individual, partner, shareholder, director, officer, manager, principal, agent, subcontractor, employee or in any other relationship or capacity whatsoever: a) Managing, serving in any business development role, or performing the same or similar work as that which you managed or performed at Hi-Tech on behalf of any business that provides the same or similar service lines as Hi-Tech, including any Hi-Tech competitor; b) Actually or attempting to solicit,

1

divert, call upon, sell, or in any other manner directly or indirectly market services to any customer or client of the Hi-Tech office you worked in or managed, including prospective customers and projects that were targeted or being solicited by the office you worked in or managed at the time of your departure; or c) Providing competitive services to any person, entity or business that is or was a customer or client of any Hi-Tech office which you managed or worked in during the prior two years. You acknowledge that these limitations are reasonable and are specifically and narrowly designed to protect Hi-Tech's confidential information and legitimate business interests and expectations.

…

4. You agree that you will not, directly or indirectly, hire, solicit or otherwise cause other employees of Hi-Tech to leave Hi-Tech for a period of one year following your separation from Hi-Tech. You also agree not to provide or disclose any Hi-Tech employee information to any other employer.

5. …You further agree that you will not use any confidential information you learn or obtain from Hi-Tech during your employment against Hi-Tech in any way or to otherwise divulge any confidential information to any party. Among other things, confidential information (often considered trade secrets) includes Hi-Tech's bidding and pricing, client lists, proprietary software, proprietary systems, marketing programs, financial statements and reports, contract terms, and employee information.

In July 2016, Hi-Tech transferred its assets to Intertek. The beneficiary trust agreement between Hi-Tech and Intertek defines "trust assets" as "Seller's rights, title and interest in all Contracts, Customer Payments, receivables and cash, Records and Business Information and Employee agreements of the Seller."

Dirksen resigned on March 19, 2019 and began working for Crossbridge Compliance, L.L.C., one of Intertek's competitors. On April 25, Intertek sued Dirksen for breach of contract, alleging that he is competing with Intertek in violation of the employment agreement's protective covenant. Specifically, Intertek alleged that Dirksen: (1) performed the same or similar work at Crossbridge as he performed at Hi-Tech/Intertek; (2) actually solicited, diverted, called upon, sold, or in any other manner directly or indirectly marketed services to any customer or client of any Hi-Tech/Intertek office Dirksen worked in or managed (or attempted to do so); and (3) provided competitive services to any person, entity or business that is or was a customer or client of any Hi-Tech/Intertek office which Dirksen managed or worked in during the prior two years. The trial court signed a temporary restraining order in favor of Intertek.

At the temporary injunction hearing, Nicole Bell, one of Intertek's attorneys, testified that Intertek acquired Hi-Tech around October 2015 and Dirksen continued as an Intertek employee. Bell stated that Intertek acquired Hi-Tech's assets, including employee agreements, and that

Dirksen continued working under that agreement. She testified that Dirksen never repudiated the agreement or contacted her to ask whether he was still bound by the agreement.

Dirksen testified that he became an employee of Intertek and he acknowledged that no one ever told him anything other than the contractual agreements he had with Hi-Tech continued to be agreements with Intertek. But he never agreed that Hi-Tech could assign the agreement to another employer. Dirksen verbally told his boss that he did not consider his agreement to be valid because it was signed with Hi-Tech, not Intertek. He acknowledged signing, but not drafting, a letter, which states that a "'business-as-usual' approach" could be expected and that "ongoing customer relations, contracts, certifications, and communications will not be disturbed or interrupted during this transition period." Dirksen stated he would not have signed a non-compete agreement with Intertek because he was never certain that he wanted to continue working for Intertek. And Intertek never asked him to sign a new non-compete agreement, told him that it considered the agreement with Hi-Tech to be Intertek's agreement, or told him that he was still bound by the covenant with Hi-Tech. To his knowledge, Intertek did not require new employees to sign a covenant not to compete. During Dirksen's employ, Intertek promoted him and, consequently, Dirksen had different job responsibilities. He also made a lateral move at one point. When he left Intertek, no one mentioned him being bound by the covenant.

Mark Durham, Intertek's general manager, testified that he does not have a non-compete with Intertek and has never been asked to sign one. He stated that Dirksen never told him he thought he was no longer bound by the non-compete agreement.

Subsequent to this hearing, the trial court denied Intertek's application for a temporary injunction and ordered that the temporary restraining order be dissolved.

In July, Dirksen filed a traditional motion for summary judgment. Dirksen maintained that his employment agreement constitutes a personal services contract and the agreement could not be assigned to Intertek without his consent, which he did not give; nor was the agreement amended. Dirksen further argued that any restrictions in the agreement were triggered by his separation from Hi-Tech's employ in 2016, making the restrictions effective through December 31, 2017 at the latest, and none of the conduct forming the basis of Intertek's breach of contract claim related to any pre-March 2019 conduct. Accordingly, Dirksen contended that Intertek is not a proper party to sue and that its breach of contract claim failed as a matter of law.

As summary judgment evidence, Dirksen relied on excerpts of his testimony from the injunction hearing, as well as the employment offer letter from High-Tech and the employment agreement. Also, in a declaration attached to his motion, Dirksen stated that he never agreed that Hi-Tech could assign the employment agreement to another employer, person, or entity, and never consented to an assignment. After he began working for Intertek, no one asked him to sign a covenant not to compete, told him that Intertek considered the Hi-Tech agreement to have been assigned to Intertek, or told him that he was still bound by that agreement. He told his boss that he did not believe the agreement to be effective as if made by him and Intertek. His boss acknowledged this and told Dirksen that Intertek did not believe in or require non-compete agreements. Dirksen explained that he never would have authorized or consented to an assignment, as the agreement was, "personal to [him], as between [him] and Hi-Tech, related to [his] employment with Hi-Tech." As he stated at the injunction hearing, Dirksen explained that he was not certain he wanted to continue working for Intertek and he would not have agreed to a similar agreement with Intertek because he was not comfortable with the new ownership and management, or direction of the company. Moreover, at the time of the acquisition, he was senior vice president, but his role later changed to director of business development and in his last year with Intertek, his role changed to director of mechanical integrity. Intertek never asked him to sign a non-compete agreement regarding those role changes and did not suggest he was bound by the agreement he signed with Hi-Tech. When he resigned, no one from Intertek suggested that a non-compete was in place that would restrict his post-Intertek employment. Approximately one week after leaving Intertek, Dirksen began working for Crossbridge, which Intertek knew. Dirksen and Intertek representatives subsequently discussed business-related issues, including Crossbridge's potential assumption of a building lease and the sale of software to Crossbridge. Intertek never suggested that Dirksen was violating his employment agreement.

On October 23, Intertek deposed Dirksen, during which he testified that he was not involved in the negotiations or acquisition of Hi-Tech by Intertek and was not consulted about or related to any agreements Intertek made to acquire Hi-Tech. After learning that Intertek acquired Hi-Tech, he considered himself an Intertek employee and conveyed this to others. He acknowledged that once Intertek acquired Hi-Tech's assets, he continued working for Intertek as he had done with Hi-Tech and continued doing the same tasks, including maintaining confidential and proprietary information that belonged to Intertek. He was unaware of any

4

confidential business information to which he was privy with Hi-Tech but to which Intertek did not give him access. However, he testified to telling his boss that he did not think he had a valid employment agreement with Intertek. Dirksen's boss responded, "probably not," and stated that Intertek does not believe in non-compete agreements. Dirksen accepted this opinion and did not press the issue or submit his belief to Intertek in writing. He later spoke to Richard Bundrick, an Intertek employee who eventually went to Crossbridge, and they discussed the non-compete and did not feel it was transferable, as it was signed with Hi-Tech, not Intertek. After he began working for Crossbridge, Dirksen contacted Intertek representatives about purchasing software. During one conversation, Dirksen's employment agreement was mentioned, to which an Intertek representative responded that he was not under a non-compete and did not have a previous employment agreement with Intertek. Neither Dirksen nor Intertek ever made a written agreement one way or the other regarding the relationship of his Hi-Tech employment agreement to his employment with Intertek. Nor did either party raise any question, in writing, that says the employment agreement does not apply.

Intertek provided summary judgment evidence in the form of affidavits from Rana Gosh, Intertek's general manager of AIM software, and Nikhil Kumar, Intertek's director of AIM engineering and software. Both Gosh and Kumar averred that not before, during, or after their meeting with Dirksen regarding the lease of software, did Dirksen mention or discuss his employment with Intertek or whether he had an employment agreement or noncompete agreement with Intertek.

The trial court subsequently granted Dirksen's summary judgment motion, ordered that Intertek take nothing as to Dirksen, and dismissed Intertek's lawsuit with prejudice. The order does not specify the basis for the trial court's ruling. The trial court denied Intertek's motion for new trial. This proceeding followed.

## SUMMARY JUDGMENT

In two issues, Intertek contends the trial court erred by granting Dirksen's summary judgment motion.

### Standard of Review

We review the trial court's decision to grant summary judgment de novo. ***Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.***, 253 S.W.3d 184, 192 (Tex. 2007). The movant

for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); ***Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding***, 289 S.W.3d 844, 848 (Tex. 2009). Once the movant establishes a right to summary judgment as a matter of law, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact, thereby precluding summary judgment. *See* ***City of Houston v. Clear Creek Basin Auth.***, 589 S.W.2d 671, 678-79 (Tex. 1979). Review of a summary judgment requires that the evidence be viewed in the light most favorable to the nonmovant. ***Town of Shady Shores v. Swanson***, 590 S.W.3d 544, 551 (Tex. 2019). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. ***Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.***, 51 S.W.3d 573, 577 (Tex. 2001). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all the summary judgment evidence. ***Goodyear Tire & Rubber Co. v. Mayes***, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam). A fact issue may be created either by disputed or ambiguous facts. ***McCreight v. City of Cleburne***, 940 S.W.2d 285, 288 (Tex. App.—Waco 1997,wwrit denied).

## Applicable Law

"[T]he presumption or general rule under Texas law … is that all contracts are freely assignable." ***In re FH Partners, L.L.C.***, 335 S.W.3d 752, 761 (Tex. App.—Austin 2011, orig. proceeding). "Texas law has long been said to be quite 'liberal' in favoring assignment." *Id*. at 763. An exception to the general rule applies when a contract relies on the parties' personal trust, confidence, skill, character, or credit. *Id*. at 762 (quoting ***Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.***, 823 S.W.2d 591, 596 (Tex.1992), *superseded by statute on other grounds as stated in* ***Subaru of Am., Inc. v. David McDavid Nissan, Inc.***, 84 S.W.3d 212, 225–26 (Tex. 2002)). The notion underlying this exception is that the "general policy of free assignment should yield to a contracting party's interest in choosing the person with whom it deals with respect to certain types of contractual rights or duties that, by their nature, contemplate or require performance only by a specific person." *Id*. Such rights or duties:

> …arise on account of suretyship; technical guaranty; personal relationship, as between master and servant; personal skill or services, as in such a case, or that of an attorney for his client; personal terms of contract, as where a particular obligee is made the measure of performance, the agreement is to supply what he "needs," or he is to be "satisfied"; or confidence or trust, as from

> lender toward borrower—it being everywhere conceded that in such instances a man has a right to choose the individuals with whom he will deal.

*Id*. at 762-63 (quoting *Dittman v. Model Baking Co.,* 271 S.W. 75, 77 (Tex. Comm'n App. 1925, judgm't adopted)). This exception "does not turn on a particular party's subjective 'trust' or 'reliance' upon entering into a particular contract, but on whether the rights it conveys to the other party are a type that Texas law regards as 'involving a relation of personal confidence' such that the other party should not be permitted to unilaterally substitute another for itself through assignment." *Id*. at 765.

An executory contract for personal services cannot be assigned by the employer without the employee's consent, as everyone has the right to determine with whom he will contract. *Am. Biomedical Corp. v. Anderson*, 546 S.W.2d 112, 116 (Tex. Civ. App.—Amarillo 1977, no writ). When the employee makes a contract restricting his right to compete, and provides that the contract is assignable, an employer may assign the contract. *Tex. Shop Towel v. Haire*, 246 S.W.2d 482, 484 (Tex. Civ. App.—San Antonio 1952, no writ). But, because a business owner may require from his employee a covenant not to compete; it does not follow that he can transfer the covenant to a buyer without the employee's consent. *Id*.

## Assignability

In its first issue, Intertek contends that summary judgment was improperly granted because the covenant not to compete was freely assignable, making Intertek a party to the employment agreement and legally entitled to enforce the covenant.

The employment agreement states that it is between Dirksen and Hi-Tech and should be "given effect to the fullest extent possible[.]" Dirksen agreed not to compete with Hi-Tech "for one year following [his] last day of employment with Hi-Tech[.]" The agreement provides that it "can only be amended if both sides agree in writing," and does not authorize or prohibit assignability, limit assignability in any way, or mention Hi-Tech's successors or assigns.

Intertek contends that express assignment of the covenant not to compete was unnecessary because a covenant is connected with the good will of the business sold and, consequently, the agreement (including the covenant not to compete) was assigned to Intertek as part of the purchase of Hi-Tech's business. Intertek maintains that, as a result, it stands in the shoes of Hi-Tech and the agreement must now be read to substitute "Intertek" for "Hi-Tech."

Given the agreement's silence as to whether assignment was authorized or prohibited, the presumption is that the agreement was freely assignable. *See FH Partners, L.L.C.*, 335 S.W.3d at 761. Accordingly, we must determine whether the agreement qualifies as a personal services contract under the exception to the general rule of assignability. *See id.*; *see also Anderson*, 546 S.W.2d at 116; *Haire*, 246 S.W.2d at 484. Intertek maintains that the exception does not apply because Dirksen's agreement is not a contract for personal services. In so arguing, Intertek points to a statement in Dirksen's brief in which he states that he uses his "general skills" at Crossbridge. Intertek also relies on an opinion from the United States Bankruptcy Court, which states, "Some examples of a personal services contract are 'a contract to paint a portrait, write a novel, or perform other work requiring 'rare genius' and 'extraordinary skill.'" *In re Wofford*, 608 B.R. 494, 496-97 (Bankr. E.D. Tex. 2019). According to Intertek, Dirksen's agreement did not require "rare genius" or "extraordinary skill."

However, the offer letter, which the agreement expressly incorporates, provides that Dirksen was being offered the salaried position of vice president of mechanical integrity at the Longview, Texas office. A vice presidential position certainly falls within the category of "extraordinary skill." And the full statement in Dirksen's brief asserts, "At Crossbridge, Dirksen is using his own general skills, knowledge, personal relationships, and personal goodwill *developed over his decades of experience in the industry*." (emphasis added). In fact, Dirksen testified that he was hired because of his abilities and that he has been in the business for twenty-eight years. Most importantly, the employment contract expressly states, "You are being hired, promoted, or reassigned into a *position of trust and confidence*." (emphasis added). The agreement demonstrates this conferring of trust and confidence in Dirksen, providing that Dirksen will receive access to confidential information and trade secrets, including information regarding client relationships and contacts, resources, marketing strategies, sales targets and opportunities, contract terms, proprietary training procedures, business methods and models, plans, financial information, and market analysis. And the covenant itself begins with, "Because you will now be working in a *position of trust and confidence* with access to and use of this information…" (emphasis added). As previously stated, the personal services exception applies when a contract relies on the parties' *personal trust, confidence*, skill, character, or credit. *See FH Partners, L.L.C.*, 335 S.W.3d at 762. The plain language of the employment agreement reflects reliance on the personal trust and confidence between Hi-Tech and Dirksen; thus, the

agreement qualifies as a personal services contract.[1]  *See Alattar v. Kay Holdings, Inc.*, 485 S.W.3d 113, 119 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (appellate court construes unambiguous contract language according to its plain language as matter of law).

Nevertheless, Intertek contends, "Even if, *arguendo*, Appellee's Employee Agreement is a personal services contract, the issue of enforceability of the covenants does not change because covenants not to compete are ancillary to an employment agreement or personal services contract and thus 'severable, valid, enforceable and assignable[.]'"  Intertek cites to cases that stand for the proposition that a covenant against competition is not an agreement to work, but is a "restrictive agreement[] promising not to compete … [i]t has been held that such are transferrable or assignable as assets." *Thames v. Rotary Eng'g Co.*, 315 S.W.2d 589, 590 (Tex. Civ. App.—El Paso 1958, writ ref'd n.r.e.); *see T.E. Moor & Co. v. Hardcastle*, 421 S.W.2d 126, 129 (Tex. Civ. App.—Beaumont 1967, writ ref'd n.r.e.) (stating that non-compete agreement is severable, valid, enforceable, and assignable); *see also Wofford*, 608 B.R. at 497 ("Various courts have recognized a difference between a personal services contract and a non-compete agreement. The former requires affirmative actions by the employee, whereas the latter requires only that they refrain from certain actions").  According to Intertek, the employment agreement did not require that Dirksen take any affirmative action to comply with the covenant and that obligation is no different whether enforced by Hi-Tech or Intertek.[2]

But, to be enforceable, a covenant not to compete must be ancillary to or part of an otherwise enforceable agreement at the time the agreement is made.  *See* TEX. BUS. & COMMERCE CODE ANN. § 15.50(a) (West 2011).  The contract or transaction to which the covenant is ancillary must have a "primary purpose that is unrelated to restraining competition between the parties." *Marsh USA, Inc. v. Cook*, 354 S.W.3d 764, 770 (Tex. 2011).  Therefore, we decline Intertek's invitation to conclude that the covenant not to compete, standing alone, is severable, valid, enforceable, and assignable.  *See id.*; *see also Goodin v. Jolliff*, 257 S.W.3d 341, 350 (Tex. App.—Fort Worth, 2008, no pet.) (Section 15.50(a) of civil practice and remedies

---

[1] Citing *Abramov v. Royal Dallas, Inc.*, 536 S.W.2d 388 (Tex. Civ. App.—Dallas 1976, no writ), Intertek states that agreeing with Dirksen that the assignment is not valid would allow him to take advantage of a technicality to perpetrate an injustice on Intertek.  *Abramov*, however, did not discuss the personal services exception.

[2] Intertek also relies on cases from federal and out-of-state jurisdictions, neither of which are binding on this Court with respect to the issues before us.  *See Nissan N. Am., Inc. v. Tex. Dep't of Motor Vehicles*, 592 S.W.3d 480, 497 n.20 (Tex. App.—Texarkana 2019, no pet.); *see also City of Carrollton v. Singer*, 232 S.W.3d 790, 797 n.6. (Tex. App.—Fort Worth 2007, pet. denied).

code does not "permit a noncompete covenant to stand alone; it must be 'ancillary to or part of' an enforceable agreement").

**Estoppel**

Also as part of its second issue, Intertek argues that Dirksen is estopped from (1) denying his assent to the assignment of the employee agreement because he continued accepting salary from Intertek and performing services for Intertek; and (2) claiming that his employment with Hi-Tech ended in 2016, triggering the non-compete clause.[3]

Intertek relies on *Thames* to support its contention that Dirksen's continuance of employment is, as a matter of law, continuation of the original contract. *See Thames*, 315 S.W.2d at 591 ("It has been held that continuance of the employment is, as a matter of law, continuation of the old contract"). In *Thames*, the employees were originally employed by a partnership, Rotary Engineering Company, and entered non-compete agreements. *Id.* at 590. Over time, new articles of partnership were entered after various partners withdrew and another died. *Id*. The partnership assets were subsequently transferred to a corporation comprised of the remaining partners. *Id*. The employees terminated their employment and the corporation obtained an injunction to prevent them from carrying on business activities engaged in or contemplated by the corporation. *Id*. The appellate court concluded that the noncompete agreements were transferred into and inherited by each succeeding partnership, and, eventually, the corporation. *Id*. at 591. The court further opined that by continuing to work, without any apparent change in their contractual relations, the employees acquiesced and consented to the changes by continuing to accept their salaries and perform the services required. *Id*. "In other words, appellants [employees] had received the benefits during the changes, and … are, therefore, obligated to abide by their promise and commitment." *Id*. The court held as follows:

> … these covenants, or non-competitive agreements, were, in effect, transferred and assigned to each successive partnership during the time appellants were employed, and that appellants, by their continuing to work and accept the benefits from their original contracted employment, without change or objection on their part, continued the original obligation in full force and effect until they, the appellants, terminated their employment. … appellee corporation, by virtue of the various transfers and assignments of the assets of the changing co-partnership, had the legal right to seek enforcement of these non-competitive agreements. We think it would be unjust to hold

---

[3] Intertek repeatedly refers to "collateral estoppel." The doctrine of collateral estoppel, however, precludes *relitigation* of ultimate issues of fact actually litigated and essential to the judgment in a *prior suit*. *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 801 (Tex. 1992). Because this case does not involve relitigation of issues litigated in a prior suit, the doctrine of *collateral* estoppel does not apply.

otherwise, and can see no sound legal reason why a partnership should be penalized and bereft of benefits and assets of this type, merely because some of their members drop out, or they incorporate. This agreement, like many others, is based on the consideration that the training of the employee, and placing him in contact with the customers of the employer, is a part of the consideration of the contract of employment. We do not see any good reason why a personnel change in the employer should deprive the organization of the protection that it had provided, and this is especially true where the employee continues to work and accept the benefits of such relationship without objection.

*Id*. at 591-92.

*Thames* is factually distinct from the present case. In *Thames*, the employees continued working for Rotary Engineering as its makeup changed, i.e., from composition of the partners in the partnership to transformation of the partnership into a corporation. *See id*. ("It is equally clear from the record that the appellants continued working without any new type of agreement, as the various changes in the makeup of appellee transpired"). By the time they terminated their employment, the employees still worked for Rotary Engineering, albeit in the form of a corporation rather than a partnership. The present case involves more than a mere change in the makeup of the entity with whom Dirksen originally signed his employment agreement. Rather, the entity itself changed from Hi-Tech to Intertek. In its reply brief, Intertek acknowledges this fact, stating that assignment of the employment agreement "changed which company performed the reciprocal considerations[.]" And Durham testified that Hi-Tech no longer exists. Additionally, Dirksen's testimony establishes that his role with Intertek changed on two occasions; thus, unlike in *Thames*, this case involves some change in contractual relations between the parties.

Acquiescence is defined as, "A person's tacit or passive acceptance; implied consent to an act." BLACK'S LAW DICTIONARY 25 (8th Ed. 2004). "It is reasonable to conclude that before even implied consent to a transaction can be considered, acquiescence requires knowledge of that to which consent is implied." *Rogers v. Ricane Enters., Inc.*, 930 S.W.2d 157, 174 (Tex. App.—Amarillo 1996, writ denied). Thus, we must determine whether Intertek raised a fact issue as to whether Dirksen knew Hi-Tech properly assigned the agreement to Intertek and despite such knowledge, continued working for Intertek and thereby acquiesced to the assignment.

It is undisputed that Dirksen continued working for Intertek after it acquired Hi-Tech, including signing a letter to customers regarding the transition. But the record likewise establishes that Dirksen operated under the belief that his employment agreement did not apply

to Intertek. Dirksen testified to telling his boss that he did not consider his agreement to be valid because it was signed with Hi-Tech. And again, Dirksen's role with Intertek changed at least twice. Yet, Intertek never asked him to sign a covenant not to compete, never told him that it considered the agreement with Hi-Tech to be Intertek's agreement, never said he was bound by the covenant with Hi-Tech, and did not mention him being bound by the covenant when he left Intertek. Dirksen's boss indicated that the covenant probably was no longer valid and further advised Dirksen that Intertek did not believe in covenants not to compete. In fact, Durham acknowledged that he has no such covenant with Intertek and has never been asked to sign one. Knowing that he signed an agreement with Hi-Tech and Intertek did not require non-competes, Dirksen could reasonably conclude that the covenant contained in his employment agreement no longer applied. Even after Dirksen left Intertek, its representatives continued doing business with him at Crossbridge despite a covenant not to compete that it later claimed Dirksen violated.

The record simply does not demonstrate that Dirksen impliedly consented, or acquiesced, to assignment of his employment agreement to Intertek. Even viewing the evidence in the light most favorable to Intertek, evidence that Dirksen continued working and accepting a salary, did not communicate his belief regarding the agreement's inapplicability to Bell, Durham, Gosh, or Kumar, and did not submit in writing his opinion that the agreement no longer applied or seek in writing confirmation from Intertek of this belief, fails to negate evidence establishing that Dirksen continued working for Intertek under the belief that the agreement no longer applied and he had no knowledge to the contrary.

Accordingly, for the reasons discussed above, we conclude that Dirksen established his entitlement to summary judgment as a matter of law and Intertek did not raise a genuine issue of material fact to preclude summary judgment.[4] We overrule issue one.

**Motion to Compel**

In its second issue, Intertek maintains that the trial court erroneously granted summary judgment before ruling on its motion to compel Dirksen's answer to the following deposition question: "At any time prior to receiving the lawsuit that Intertek filed to enforce your non-compete agreement, had you ever sought any legal advice from anyone, a lawyer, about whether

_____

[4] Because we so conclude, we need not address Dirksen's contention that his separation from Hi-Tech in 2016 triggered the covenant and Intertek's related argument that Dirksen is estopped from asserting this position. Nor must we consider Dirksen's contention that the employment agreement was unenforceable for want of adequate consideration. *See* TEX. R. APP. P. 47.1.

you were bound by that non-compete agreement?"[5]   At the deposition, Dirksen's counsel instructed him not to answer based on the attorney-client privilege.  Intertek's counsel argued, "I'm asking if he sought any legal advice on the -- whether he was bound by his non-compete to Intertek.  That is a yes or no question.  It cannot invade the attorney-client privilege."  Counsel further explained, "I  don't want to know the substance of any legal advice or any information that was conveyed to obtain legal advice."

In Intertek's subsequent motion to compel, it asked the trial court to overrule Dirksen's objection and continue submission of the summary judgment motion pending a ruling on the motion to compel.  Intertek argued, "whether Dirksen ever sought or obtained legal advice on the assignability of his Employee Agreement or covenants not to compete is unquestionably relevant to the issues Dirksen briefed in his motion for summary judgment because Dirksen's response goes to the weight and veracity of whether Dirksen understood Hi-Tech Testing Services, Inc. had properly and legally assigned Dirksen's Employee Agreement and covenants not to compete to Intertek."  The trial court granted summary judgment without ruling on the motion to compel. Intertek filed a motion for new trial, in which it argued that the trial court erred by granting summary judgment without first ruling on Intertek's motion to compel.  The trial court denied the motion.

On appeal, Intertek contends that Dirksen's failure to answer counsel's question unfairly prejudiced its ability to respond to Dirksen's summary judgment motion "because [Dirksen's] response would go to the weight and veracity of whether [he] understood Hi-Tech had properly and legally assigned [his] Employee Agreement and covenants not to compete to Intertek." According to Intertek, it merely sought an answer as to whether Dirksen sought legal advice, not as to what was said to or by counsel, and whether a party sought or obtained legal advice is not a confidential communication made to facilitate the rendition of legal services to the client.

"Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."  TEX. R.

---

[5] Counsel attempted, more than once, to ask this question in various forms, including "My question is, did you ever before you found out you were being sued by Intertek, seek legal advice about anything related to your employment agreement?"

13

CIV. P. 166a(g).[6]  Here, by proceeding with the summary judgment submission and granting summary judgment, the trial court implicitly denied Intertek's request for a continuance and motion to compel.  *See* **Suniverse, LLC v. Universal Am. Mortg. Co., LLC**, No. 09-19-00090-CV, 2021 WL 632603, at *8 (Tex. App.—Beaumont Feb. 18, 2021, no pet. h.) (mem. op.) (record supported "inference that, by proceeding with the submission of the motions for summary judgment as scheduled and by granting the motions for summary judgment, the trial court necessarily implicitly denied Appellant's request for a continuance and motion to compel").[7]

A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made to facilitate the rendition of professional legal services to the client.  TEX. R. EVID. 503(b)(1).  "This means that the communication must be 'made by a client seeking legal advice from a lawyer in his capacity as such and the communication must relate to the purpose for which the advice is sought ....'"  **In re Silver**, 540 S.W.3d 530, 539 (Tex. 2018) (orig. proceeding) (quoting **Duval Cty. Ranch Co. v. Alamo Lumber Co.**, 663 S.W.2d 627, 634 (Tex. App. Amarillo 1983, writ ref'd n.r.e.)).  "Under the great weight of authority, information concerning the factual circumstances surrounding the attorney-client relationship has no privilege, at least as long as disclosure does not threaten to reveal the substance of any confidential communications."  **Duval Cty. Ranch Co.**, 663 S.W.2d at 634.  "Therefore, the attorney-client privilege does not encompass such nonconfidential matters as the terms and conditions of an attorney's employment, the purpose for which an attorney has been engaged, or any of the other external trappings of the relationship between the parties."  **Id**.

But Intertek did not limit its question to whether Dirksen sought legal advice.  Intertek specifically sought to inquire whether Dirksen pursued legal advice for the purpose of determining whether he remained bound by the covenant not to compete in his agreement with Hi-Tech.  While the purpose for which counsel is engaged may generally not qualify as

---

[6] We note that the "adequate time for discovery" provision in Rule 166a(i) applies to a no-evidence motion for summary judgment, not traditional motions.  *See* TEX. R. CIV. P. 166a(b), (i); *see also* **Town of Shady Shores v. Swanson**, 590 S.W.3d 544, 552 (Tex. 2019); **Allen v. United of Omaha Life Ins. Co.**, 236 S.W.3d 315, 326 (Tex. App.—Fort Worth 2007, pet. denied).

[7] Dirksen contends Intertek waived its complaint by failing to object to the trial court's failure to rule. However, as a prerequisite to presenting a complaint for appellate review, the record must show that the trial court ruled on the request, objection, or motion, either expressly or *implicitly*.  TEX. R. APP. P. 33.1(a)(2)(A).

14

privileged, such is the case only so long as disclosure does not threaten to reveal the substance of any confidential communications. *See id.* Were Dirksen to answer Intertek's question in the affirmative, Intertek would gain access to the substance of Dirksen's communications with legal counsel, potentially opening the door to further disclosure. As the "attorney-client privilege shields otherwise relevant information from discovery … we construe it narrowly to 'encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" ***In re XL Specialty Ins. Co.***, 373 S.W.3d 46, 56 (Tex. 2012) (orig. proceeding) (quoting ***Upjohn Co. v. United States***, 449 U.S. 383, 389, 101 S. Ct. 677, 682, 66 L.Ed.2d 584 (1981)). Because the trial court could reasonably conclude that disclosure of whether Dirksen consulted counsel for the purpose of determining the employment agreement's legal effect threatened to reveal the substance of confidential communications, the trial court did not abuse its discretion by implicitly denying the motion to compel and proceeding with its summary judgment ruling. We overrule issue two.

## DISPOSITION

Having overruled Intertek's two issues, we ***affirm*** the trial court's judgment.

**GREG NEELEY**
Justice

Opinion delivered March 18, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 18, 2021**

**NO. 12-20-00060-CV**

**INTERTEK ASSET INTEGRITY MANAGEMENT, INC.,**
Appellant
V.
**DARRIN TODD DIRKSEN,**
Appellee

_____

Appeal from the 7th District Court
of Smith County, Texas (Tr.Ct.No. 19-1029-A)

_____

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, all costs are assessed against Appellant, **INTERTEK ASSET INTEGRITY MANAGEMENT, INC.,** and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*